371 So.2d 1120 (1979)
Francis Louis FOLSE et al.
v.
Michalas E. FAKOURI et al.
No. 63232.
Supreme Court of Louisiana.
May 21, 1979.
*1121 Robert M. Johnston, Johnston & Duplass, New Orleans, for defendants-respondents.
Frederick J. Gisevius, Jr., Dennis L. Rousseau, David E. Caruso, Jr., Robert F. Shearman, Law Offices of Frederick J. Gisevius, Jr., New Orleans, for plaintiffs-applicants.
SUMMERS, Chief Justice.
This is a suit for personal injuries instituted by Francis Louis Folse and June Ann Durning, the latter appearing individually and as natural tutrix and administratrix of the estate of her minor son, Stanley Jude Durning. At present only the claim of Francis Louis Folse is before the Court. Folse's claim was based upon injuries he sustained on April 20, 1971 when the school bus he was driving on Metairie Road in Jefferson Parish was struck by a truck driven by John R. Mayer. Folse owned the school bus he was driving and was transporting school children under a contract with the Jefferson Parish School Board. The truck driven by Mayer was registered in the name of Clover Farm Creamery, a dairy located in Opelousas, Louisiana.
Defendants in the suit are Michalas E. Fakouri and Mazie Bertinot, d/b/a Clover Farm Creamery, Hartford Accident and Indemnity Company, the auto liability carrier of the truck, and John R. Mayer, the driver. By supplemental petition Clover Farm Creamery, Inc., and Green Spot of Opelousas were added as defendants. Green Spot was later dismissed from the suit.
Insofar as pertinent here the jury rendered judgment in favor of Folse and against defendants in solido for $327,926.81. Hartford Accident and Indemnity Company paid $100,121, the limits of its liability, and *1122 Hartford is no longer interested in the outcome of the case. The remaining defendants appealed to the Fourth Circuit where the judgment of the trial court was amended by reducing the unpaid portion of the award to plaintiff Folse from $227,805.81 to $166,805.81.
The Court of Appeal also denied a motion by plaintiff Folse to dismiss the appeal; or, in the alternative, to substitute the real party in interest; or, in the further alternative, to remand the case to the District Court for further proceedings. The motion is based upon allegations of the appealing defendants that they had been discharged in bankruptcy, are insolvent and are unable to respond in damages.
And, although defendants denied at the trial that there was excess insurance and asserted their impecunious condition, after the trial Fakouri, one of the defendants, disclosed that a policy was issued to him by Insurance Company of North America (INA) providing excess coverage of one million dollars for this accident.
Therefore, based upon the alleged lack of interest of these impecunious defendants and the assumption that INA insured the accident, plaintiff prayed that the appeal of the named defendants be dismissed and INA be joined as defendant. 361 So.2d 887.
Folse applied for certiorari on October 11, 1978 to have this Court review the decision of the Court of Appeal. We granted the writ on October 26, 1978, and on November 27, 1978 Folse died. 363 So.2d 1385. His widow, Barbara Falgout, has been substituted as his legal representative to conduct this litigation and stand in judgment for the decedent.
There are no issues of liability or contentions that Folse was not totally and permanently disabled as a result of the injuries sustained in the collision of April 20, 1971. The issue is quantum.
It was contended on behalf of plaintiff Folse in the application to this Court for writs that it was error for the Court of Appeal to deny plaintiff's motion to dismiss the appeal as to the named defendants and to fail to substitute INA as a party defendant. However, it is apparent from the final brief filed for plaintiff that only the reduction of the awards is now urged. We take this position to be influenced by the statement in defendants' brief that liability insurers are not indispensable or even necessary parties to a suit. In the event that it is ultimately determined that the policy of INA did provide coverage to the defendant Fakouri, defendants assert, the decision of this Court would control the obligations of the insurer under the terms of its policy, and the plaintiff will suffer no detriment. A separate suit filed in St. Landry Parish is in progress to determine whether INA's policy covered Fakouri.
This review will therefore be limited to a consideration of the reduction of the awards for loss of past earnings and past earning capacity and for loss of future earnings and future earning capacity.
Loss of past earnings are the monetary losses plaintiff experienced during the interval between the date of the accident, April 20, 1971, and the time of the trial which began on December 1, 1975 and ended on December 12, 1975, a period of four years, and eight months.
In the trial court the jury awarded Folse $47,000 to reimburse him for the loss of past earnings. The Court of Appeal reduced this award to $27,500. The appellate court was of the opinion that the trier of fact possesses considerable discretion in making awards for loss of future earnings because of the speculative nature of those awards and because that type award cannot be calculated with mathematical certainty. This same broad discretion, the court found, is not applicable where loss of past earnings are involved. Presumably this conclusion was reached because past losses were considered to be more accurately ascertainable.
Proceeding on this premise the court rejected expert testimony to the effect that the average bus driver's salary in the United States was $10,000 per annum. The Court then reasoned that plaintiff continued to own the school bus and was paid mileage for its use in transporting children. *1123 Because he was no longer able to drive the bus the court found he was entitled to an award for the salary paid substitute drivers. This amounted to $20,196 for the four years preceding the trial. Plaintiff also claimed that he earned $1,200 per annum as an auto mechanic working at odd jobs for others. This was allowed. However, the claim that his work on his own vehicles each year had a value of $1,800 was reduced to approximately $800 per annum. Based upon these calculations, the court decided plaintiff's loss of past earnings amounted to $27,500 for the period of four years and eight months prior to trial.
Plaintiff contends that the Court of Appeal erred when it restricted plaintiff's claim for loss of past earnings by the calculations employed when the jury award was based upon those same calculations plus a loss of plaintiff's past earning capacity. That the jury did consider and base its award on plaintiff's loss of past earning capacity in addition to the actual monetary loss is said to be evidenced by the jury's response to interrogatories stating that its award was "Past Loss of Wages and/or Earning Capacity $47,500.00."
Conceding that the loss of past wages was only $27,500, what this argument amounts to is that an additional $20,000 award was made by the jury for plaintiff's loss of the capacity to earn more during the four years and eight months before trial. Thus, it is not only plaintiff's actual monetary loss during the period, but also the effect of his disability on his capacity to earn more. The Court of Appeal has not answered this contention.
Many factors could have entered into the jury's deliberations on the question of plaintiff's loss of the capacity to earn more during the four year-eight month period prior to trial. He was fifty years old at the time of the accident. He was apparently vigorous and industrious and had been steadily employed. The actuary who testified for plaintiff stated that the average salary of bus drivers throughout the United States in 1964 as determined by the Department of Labor was $10,174. Inflation and the additional employment opportunities created by a burgeoning economy after his injury and before trial may also have played a part in the jury's deliberations and the unarticulated reasons for their award.
The jury was entitled to determine from these and other factors in the record the probabilities and estimates of plaintiff's ability to earn money. What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power. And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury.
While the general rule set forth in the Civil Code is that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. La.Civil Code art. 1934(3). While this rule is stated in the Code to be applied where the contract has for its object the gratification of some intellectual enjoyment, the principle announced there may be applied by analogy to the loss of earning capacity where "damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party." It is a rule of reason and common sense applicable to contracts and torts alike.
Because the Court of Appeal apparently disregarded the claim for loss of past earning capacity, and considering the fact that there was evidence in the record, including the expert opinion of the actuary, which would support the jury award, we find no abuse of the "much discretion" which "must be left to the . . . jury." in its award for loss of past earnings and *1124 past earning capacity. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
Logically, a like result should apply to the claim of loss of future earning capacity. The Court of Appeal reduced this award from $100,000 to $58,500. The reduction was based upon the rationale applied to the reduction of the award for loss of past earnings. As noted in the discussion relating to the loss of past earnings and earning capacity, the Court of Appeal based the reduction there on the amount lost by calculating altogether on the pecuniary loss, without considering the contention that there was also a loss of earning capacity, disregarding the expert testimony that bus drivers earned at least $10,000 per annum.
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
The Court of Appeal reduced the award for loss of future earnings based upon its rejection of the actuary's testimony that $10,000 was the average bus driver's salary in the United States. This testimony, the court said, had no probative value insofar as plaintiff's earnings were concerned because the actuary's study of salaries throughout the United States was too broadly based. When considered alongside the $9,000 income plaintiff derived from the rental of the bus and his salary as driver, together with the $1,200 allowed as earnings from odd jobs as an auto mechanic, or the $800 per annum allowed for repairing and maintaining his own bus, the $10,000 figure is representative of plaintiff's earnings as a school bus driver. Although his earnings were not all salary, they are nevertheless equivalent to the national salary average of a school bus operator.
In the absence of testimony to the contrary, there appears to be no sound reason for disturbing the award of the jury on loss of future earnings and earning capacity. In light of the reasons we have assigned for maintaining the jury award for loss of past earnings and earning capacity, these jury awards should not be disturbed.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court awarding plaintiff $47,000 to reimburse him for loss of past earnings and past earning capacity and $100,000 for loss of future earnings and future earning capacity is reinstated and made the judgment of this Court, subject to such reductions and credits properly due as a result of the payment by Hartford Accident and Indemnity Company of its policy limits.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice, dissenting.
I respectfully dissent.
The Court of Appeal opinion is correct and represents a studied and accurate review of facts in accordance with their constitutional duty. The jury evidentially used some economist's figures as to an average bus driver's salary in the United States, while the Court of Appeal's accurate review of the evidence was based on the proof adduced at trial. It is difficult to stretch plaintiffs' loss beyond that which the Court of Appeal ultimately approved, and we should encourage studied evaluations of the evidence as here demonstrated.