574 So.2d 344 (1990)
John Paul HOBGOOD
v.
Eugene J. AUCOIN, Jr., et al.
No. 90-C-0607.
Supreme Court of Louisiana.
November 8, 1990.
Rehearing Denied March 7, 1991.
Huntington Downer, Jr., Joseph Waitz, Waitz & Downer, for John Paul Hobgood plaintiff-applicant.
John Blackwell, Gibbens & Blackwell, for Eugene Aucoin and Travelers Ins. Co. defendants-respondents.
HALL, Justice.
In this case, we consider whether an award of $50,000 adequately compensates plaintiff for his loss of earning capacity. A review of the record convinces us that the award is adequate and we affirm.

PROCEDURAL HISTORY
Plaintiff, John Paul Hobgood, was injured in an automobile accident in November of 1982. The insurance carrier for the tortfeasor stipulated to liability and chose to try the case solely on the issue of damages. A judgment was rendered on January 11, 1988 in plaintiff's favor, awarding him $100,000 in general damages, $6,082 in past medical expenses, and $12,000 in future medical expenses, for a total award of $118,082.
Plaintiff appealed claiming that the trial court erred in failing to award any damages for future loss of earnings or loss of earning capacity. The court of appeal affirmed the judgment of the trial court in an unpublished opinion noted at 547 So.2d 1147, with rehearing denied in a published opinion, 551 So.2d 1362 (La.App. 1st Cir. 1989).
Plaintiff filed a writ application with this court again alleging error in the failure to compensate him for future loss of earnings and loss of earning capacity. We granted the writ and issued the following order:
"GRANTED IN PART, DENIED IN PART. The decision of the court of appeal is reversed insofar [as] it denies relator recovery for diminution of earning capacity. Under the facts of this case, relator has shown a loss of earning capacity. Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979). The court of appeal is ordered to review the record and fix relator's damages for loss of earning capacity according to the guidelines established therefor in Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La. 1980), and Coco v. Winston Industries, Inc., 341 So.2d 332, 338 (La. 1976). Otherwise, the application is denied." *345 Hobgood v. Aucoin, 551 So.2d 1306 (La. 1989).
After remand, the court of appeal, in a lengthy and well-reasoned opinion, awarded the plaintiff $50,000 for loss of earning capacity. Hobgood v. Aucoin, 558 So.2d 1285 (La.App. 1st Cir.1990).
Plaintiff again sought for this court to review the judgment of the court of appeal, claiming that the appellate court did not follow the previous order of this court and that the $50,000 award is wholly inadequate. Again, plaintiff's writ was granted. 563 So.2d 889 (La.1990). After a more thorough review of the record, we affirm.

FACTS
Since the sole issue before this court is plaintiff's loss of earning capacity, our recitation of the facts is limited to only those facts relevant to a determination of that issue.
MEDICAL CONDITION
Plaintiff was 36 years of age at the time of the accident in 1982. As a result of the accident, plaintiff received back injuries which were diagnosed as cervical and lumbar strain, with the lumbar injury being the more serious. Plaintiff has been treated conservatively by various physicians since the time of the accident and has seen no significant improvement in the lumbar pain.
Dr. William H. Kinnard performed a magnetic resonance imaging (MRI) test and subsequently a myelogram on the plaintiff in 1987. These diagnostic tests revealed that the plaintiff had degenerative arthritic changes in the cervical spine along with a bulging disc at the C-5 level of the spine. Furthermore, the tests showed compression of the fecal sack of the L-5 level of the spine, narrowing of the disc space at the L-4/L-5 level, and a central bulging disc at the L-4 level. Dr. Kinnard did not anticipate that surgery would be necessary to correct the cervical problems, but felt that a surgical fusion in the lumbar region could be a possibility to alleviate plaintiff's ongoing and worsening pain.
Because of plaintiff's relatively young age and extent of degeneration in his back, Dr. Kinnard felt that surgery would be likely. He also stated that the surgery involved had about a 70% success rate. At the time of trial, plaintiff had not undergone the fusion surgery.
Plaintiff was given a 10% disability rating to his body as a whole. He would have a 25% disability if he were to undergo the surgery. Plaintiff was instructed to "avoid activities that tended to make his condition worse and to use common sense." Lifting restrictions of 25-30 pounds and restrictions as to repetitive pushing and pulling, crawling and excessive bending would be imposed were plaintiff to undergo surgery.
PLAINTIFF'S ABILITY TO WORK
Although plaintiff continued to work after the accident, he stated that he could no longer work as hard as he had worked preceding the accident. Plaintiff owns and operates an oil well service business. The business requires that plaintiff spend many hours a week calling on customers and visiting drilling sites. Plaintiff testified that his injuries prevent him from traveling as extensively, which deprives him of crucial client contacts. Generally, he can no longer work as hard or as long as he did before the accident. Plaintiff has hired other personnel in an effort to cover for his lost ability. He contends that these personnel have not been as effective as he was.
PLAINTIFF'S EDUCATION AND EXPERIENCE
The plaintiff has a master's degree in physical education and an education specialist degree in administration supervision. He worked as a coach and teacher until the late 1970's when he began his work in oil field sales. In 1981, he started his own oil well service business, which he still operates.
PLAINTIFF'S INCOME BEFORE AND AFTER THE ACCIDENT
In 1981, the first year of his new business, plaintiff lost money. In 1982, the year of the accident, plaintiff's business income was $77,152. Thereafter, his business income was $70,351 in 1983, $77,308 in *346 1984, $82,964 in 1985, and $92,451 in 1986. Thus, plaintiff's income increased during this period of time in spite of the severe depression in the oil and gas business in Louisiana. These figures belie the assumption that plaintiff's business earnings were diminished $37,500 annually after the accident, upon which plaintiff's expert economist based his estimate of loss of future income.

LAW
In Folse v. Fakouri, 371 So.2d 1120 (La. 1979), this court recognized that in determining an award for loss of earnings and earning capacity, what the plaintiff earned before and after the injury does not constitute the measure. While plaintiff's earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury. Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
The plaintiff in Folse was a school bus driver who was totally and permanently disabled and could no longer drive his bus. In reinstating a jury award of $100,000 for loss of future earnings and future earning capacity, the court gave substantial weight to the testimony of an expert witness as to what a school bus driver could be expected to earn, even though the plaintiff was actually earning less at the time of the accident.
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977), this court noted that the full indemnification to which an injured party is entitled includes damages for decreased earning capacity, which is determined by deducting plaintiff's earning ability after the injury from his earning ability immediately prior to the injury rather than by deducting his income after the injury from his income prior to the injury.
In Coco, the plaintiff was a 20-year-old laborer who suffered a severe injury to his right hand. Several years after the accident, plaintiff went to rehabilitation school and then went to work as a mechanic, earning better wages than he did before the accident. In reinstating an in globo jury award of $350,000, which included both general and special damages, this court emphasized the testimony of plaintiff's employer concerning the amount of diminished earning capacity plaintiff suffered at his job in comparison with the earnings of other mechanics who were earning several thousand dollars more annually than plaintiff, and gave considerable weight to an economist's calculations based on a proven annual loss of $5,000 per year.
In Philippe v. Browning Arms Company, 395 So.2d 310 (La.1980), this court affirmed an award of $800,000 for impairment of earning capacity to a dentist who lost a thumb of his dominant hand and could no longer practice dentistry. The difference between what plaintiff was earning as a dentist prior to the accident and what he was able to earn later as a consultant was easily calculable and the expert economist witnesses calculated loss of earnings through the use of fairly well-accepted formulas. The court noted that one of the appropriate factors to be considered in setting damages for impairment of earning capacity is the probability or improbability that plaintiff would have earned similar amounts during the remainder of his work life, but for the injury. In the determination of an injured person's net economic loss caused by impairment of earning capacity, one of the factors to be considered is the availability of reasonable employment opportunities for which the plaintiff is suited by education, experience and physical capacity. The court noted particularly that impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed.

*347 DISCUSSION
Plaintiff suffered a back injury which impairs his ability to vigorously pursue his career in oil field sales and service. Although the record indicates that the plaintiff has not suffered a loss of income after the accident as compared to his earnings prior to the accident, it nonetheless reveals that plaintiff's ability to earn a living is impaired by his back injury. The question to be answered in this case is whether or not the $50,000 award adequately compensates the plaintiff for this loss.
Initially, plaintiff was not awarded any sum for his loss. Recognizing that plaintiff had shown a loss of earning capacity, we remanded this case to the court of appeal to review the record and set an amount for the loss. Since the trial court and the appellate court initially found no damages for loss of earning capacity, and the appellate court on such remand has exercised discretion in fixing the amount of damages, the function of this court as a reviewing court is to first determine whether the appellate court abused its discretion, and, if so, to raise the amount to the lowest figure within the court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). Unless the record reveals that the court of appeal abused its much discretion in setting this award, we will not disturb it. We find that this record does not reveal such an abuse.
Plaintiff's primary argument to this court is that the court of appeal's judgment is in direct conflict with two other decisions previously rendered by that court, namely, Henry v. National Union Fire Insurance Company, 542 So.2d 102 (La.App. 1st Cir. 1989), and Valentine v. Wells, 540 So.2d 344 (La.App. 1st Cir.1988).
In Henry, the plaintiff, a registered nurse, suffered a neck injury in an automobile accident. Ms. Henry specifically proved a loss of earning capacity through expert testimony. A vocational rehabilitation expert stated that Ms. Henry's injury prevented her from participating in certain fields of nursing. Participation in those fields were prerequisites to Ms. Henry eventually being promoted to a head nurse. Furthermore, restrictions placed on Ms. Henry by her physicians disqualified her from employment in many of the departments available to her prior to injury. Thus, Ms. Henry was able to show that her legitimate pursuit of her chosen profession was impaired by her injury and she proved the earnings she would probably have been making if not disabled. She was awarded $100,000.
In Valentine, the plaintiff machinist injured his back in an automobile accident and was totally disabled. Plaintiff was awarded $1,000,000 in globo which included in excess of $500,000 for both loss of future earnings and loss of earning capacity. The award was not broken down into separate sums for each element of damage. The economist's estimate of loss of future earnings was based on the clearly established difference between plaintiff's earnings before the accident and his lack of ability to engage in any work after the accident.
In the instant case, plaintiff did not call a rehabilitation expert to establish whether or not his injury disqualified him from pursuing certain aspects of his occupation or of teaching and coaching which he had done previously. The doctors placed no restrictions on the plaintiff other than to "avoid activities that tended to make his condition worse and to use common sense." As found by the court of appeal, the opinion of the economist who testified was based on facts not supported by the record and is entitled to no weight. Plaintiff produced no witnesses to verify that the loss of any customers after the accident was due to lack of personal contact rather than the down turn in the oil industry.
After the injury, plaintiff continued to pursue his business and did well even during a recession. He called no expert to list jobs and occupations or positions in plaintiff's chosen occupation which the injury would prohibit or impair. Without surgery, the plaintiff faces minor restrictions, avoiding pain and using common sense, and in the event of surgery, he faces lifting restrictions, crawling and bending restrictions and pulling and pushing restrictions.
*348 However, no expert or other witnesses tied these restrictions to an inability for plaintiff to pursue his occupation. Moreover, the evidence shows that plaintiff is pursuing his chosen occupation successfully although his pursuit is somewhat limited by the injury.
Yet, certainly plaintiff's inability to pursue his business as vigorously and energetically as he did prior to injury shows that his ability to earn has been impaired. It is reasonable to conclude that plaintiff could earn more money if he did not have his present physical limitations. However, the record contains little evidence that is helpful in determining the amount of an appropriate award, distinguishing this case from those discussed above where expert testimony and corroborating evidence established specific figures and probabilities from which an amount could be calculated with some degree of mathematical certainty. Here, the loss of earning capacity, although proved in a general sense, is highly speculative as to value or amount. Given the limited evidence of the economic impact of plaintiff's partial disability on his earning capacity or ability, we conclude that the court of appeal did not abuse its discretion in fixing the amount of damages for loss of earning capacity at $50,000. The judgment of the appellate court is affirmed.
AFFIRMED.