588 So.2d 711 (1991)
Lonzo THOMAS and Brendia Thomas, Plaintiffs,
v.
PETROLANE GAS SERVICE LIMITED PARTNERSHIP, James P. Morgan, and Fidelity and Casualty Company of New York, Defendants.
No. 22774-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1991.
On Rehearing October 24, 1991.
Writ Denied January 10, 1992.
*714 Walker & Walker by C. Douglas Walker, Monroe, for plaintiffs-appellees-appellants.
Davenport, Files & Kelly by Mike C. Sanders, Monroe, for defendants-third-party plaintiffs-appellants, Petrolane Gas, James P. Morgan, and Fidelity and Cas. Co. of New York.
William J. Guste, Atty. Gen. Hayes, Harkey, Smith, Cascio & Mullens by Sp. Asst. Atty. Gen., Francis C. Broussard, Monroe, for defendant-third-party defendant-appellant, State of La., DOTD.
Before HIGHTOWER, VICTORY and BROWN, JJ.
HIGHTOWER, Judge.
In this automobile accident case, the trial court awarded damages in favor of Lonzo Thomas ("plaintiff") and his wife; assigned the defendant driver, James Morgan, and his employer, sixty percent of the liability; and additionally held the third party defendant, State of Louisiana through the Department of Transportation and Development (DOTD), forty percent at fault. This appeal ensued.
Ascertaining Morgan solely at fault, we reverse the assessment against DOTD but affirm the determinations of quantum, save for modifying the award for loss of future earnings. We further reverse the dismissal of the employer's insurer, also originally named as a defendant.

FACTS AND PROCEDURAL BACKGROUND
At approximately 11:15 a.m. on a rainy February 2, 1988, plaintiff and Edward Ausberry occupied Thomas' pickup as it traveled in a southerly direction in the right or outside lane of Louisiana Highway 137, immediately south of the Interstate 20 overpass near Rayville, Louisiana. (See Appendix A for depiction.) At that approximate location, Morgan, driving his employer's Ford F-150 truck in a northerly direction on the same four-laned highway, had positioned his vehicle in the left turn lane in preparation for entering the on-ramp of the expressway. Also, at that time, a large tractor-trailer truck, commonly termed an 18-wheeler, had stopped in the left or inside southbound lane, with its driver awaiting an opportunity to traverse the northbound lanes and enter a recently established Fina self-service station.
Morgan's position in the left turn lane impeded the intended path of the 18-wheeler, while the presence of the large truck conversely obstructed Morgan's view of other southbound traffic. Morgan nonetheless proceeded, first, across the inside southbound lane blocked by the 18-wheeler, and then into the outside lane, striking the left front and side of plaintiff's vehicle.
As a result of the collision, plaintiff sustained injuries. From February 1988 through July of that same year, he underwent treatment by a family doctor, a chiropractor, a physical therapist, an orthopedic surgeon, and a neurosurgeon. Ultimately, the neurosurgeon performed a bilateral hemilaminectomy for a herniated disk at L4-5.
Plaintiff and his wife subsequently filed suit for damages against Morgan; his employer, Petrolane Gas Services Limited Partnership; and the partnership's insurer, Fidelity and Casualty Company of New York. The three defendants answered, admitting *715 that Morgan acted in the course and scope of his employment at all material times, but alleging the accident resulted solely from the fault of plaintiff. Later, by third party demand, they also sought indemnity or contribution from DOTD for a defective highway design that posed "an unreasonable risk to motorists in the position of the original plaintiffs and defendant James P. Morgan." DOTD answered and asserted various defenses.
The case proceeded to bench trial on September 5, 1989. In a May 8, 1990 written opinion, the district court allocated fault and awarded damages, while dismissing all demands against the insurer. Subsequently, on June 19, 1990, because their petition had not included DOTD as a defendant, the Thomases moved to "amend the pleadings to conform to the evidence." After a hearing, the trial judge granted the amendment. Signing of judgment on July 31, 1990, and the denial of a motion for new trial on September 24, 1990, preceded this appeal by all parties except the insurer.

DISCUSSION

Liability of DOTD
Defendants' third party demand mentioned neither negligence nor strict liability theories of recovery, but instead merely asserted that the highway posed an unreasonable risk of harm to plaintiff and Morgan. The trial court, nevertheless, found DOTD negligent "in not recognizing the danger and constructing the left turn lane, or in requiring its construction prior to the granting of the necessary permits" for installation of driveway entrances to the service station. Furthermore, the Thomases' post-trial amendment, authorized by the judge, alleged negligence against DOTD. Now, on appeal, all parties advance various arguments founded upon both theories.
Although delictual responsibility arises differently under the two concepts, liability under both hinges upon whether a defendant breached his duty to plaintiff. And, with reference to either theory, the actual duty involved is the same. Holloway v. Dept. of Trans. & Devel., 555 So.2d 1341 (La.1990); Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988); Manasco v. Poplus, 530 So.2d 548 (La.1988); Myers v. St. Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986); Dodson v. Webster Parish Police Jury, 564 So.2d 760 (La.App.2d Cir. 1990), writ denied, 567 So.2d 1127 (La. 1990). Concerning the duty owed by the state, it is well established that its obligation to motorists is to maintain highways in a reasonably safe condition and to remedy conditions creating an unreasonable risk of harm. Manasco, supra; Dodson, supra; Roberson v. Dept. of Trans. & Devel., 550 So.2d 891 (La.App.2d Cir.1989), writ denied, 552 So.2d 387 (La.1989); Gadman v. Dept. of Trans. & Devel., 493 So.2d 661 (La.App.2d Cir.1986). Of course, whether a breach of duty occurred, that is, whether an unreasonably dangerous condition existed, depends upon the particular facts and circumstances of each case. Holloway, supra; Manasco, supra; Myers, supra.
The three defendants ("original defendants") contended that the absence of a left turn lane for southbound traffic, at the intersection, created an unreasonable risk of harm to both plaintiff and Morgan under the circumstances presented. They maintained that, advantaged by such a turning lane, Morgan's line of sight for oncoming southbound traffic would have been improved, thus enabling him to adequately evaluate the situation and make appropriate maneuvers without endangering other drivers.
In support of that contention, Morgan testified that the approach of the 18-wheeler and its eventual position in the intersection impaired his ability to see other oncoming traffic. He also described his movement across the blocked lane, and then into the outside lane, as an "easing out." Later, however, he conceded that he did not know the exact speed of his maneuvers. Nor did he, preceding the accident, seek an opportunity to continue on north in order to extricate himself from the predicament.
To bolster their position concerning the intersection, the original defendants also relied upon the testimony of Dr. Odin Dart, a registered professional civil engineer. *716 He appeared as an expert in highway design, accident reconstruction, and traffic engineering and safety.
Dart, who visited the scene on three separate occasions, agreed that the intersection had originally been safely designed. However, considering the recent opening of the adjacent Fina establishment, he felt the location had become "dangerous because of the sight line impingement, particularly for the very type of movement ... being made" in the case at hand. Although such a problem would mainly arise in situations involving an 18-wheeler, he opined that a left turn lane should have been installed for traffic entering the service station. In his view, DOTD should have constructed such a modification before issuing permits allowing highway access for the business. That installation or measure, he deduced, would have decreased the probability of an accident occurring.
Dr. Don Ivey, called on behalf of DOTD, similarly observed the accident site on two different occasions. As an expert in highway safety engineering, he noted that left turn lanes are mainly utilized to prevent rear end collisions and to facilitate traffic volume, rather than to avoid left turn accidents. In his opinion, such a modification at this site would not have improved the safety of the maneuver in question. Indeed, even in retrospect, he did not find such construction warranted.
Further, reviewing the sequence of events leading up to the collision, and examining photographs showing the position and damage of the vehicles at the scene, he estimated the speed of Morgan's Ford to have been 15-20 miles per hour at impact. From the witness' evaluation, the accident "resulted from a driver choosing to operate his vehicle where he could not see oncoming traffic." Moreover, in his opinion, if that vehicle had truly "inched out," the accident could have been averted.
The original defendants also introduced, over objection, police reports of other accidents occurring at the intersection subsequent to the present mishap. Not only do such investigative records constitute inadmissible hearsay under LSA-C.E. Art. 803(8)(b)(i), but we also note that the witness, Dart, considered these documents in formulating his conclusions.
As a whole, the evidence establishes the intersection to have been properly designed to safely accommodate the traffic at this location prior to the opening of the Fina service station/convenience store, that transpired only four days before the accident. In fact, neither expert found a traffic light warranted, even after the incident. Additionally, the line of sight and left turn problem, which original defendants' expert portrayed, would primarily arise with the involvement of an 18-wheeler.
To narrow the point, the evidence adduced at trial does not demonstrate that the intersection presented an unreasonable risk of harm, even to persons in identical situations as plaintiff and Morgan. Nor does the absence of a left turn lane at the site in question reflect that DOTD breached its duty to maintain the location in a reasonably safe condition. Thus, the trial court clearly erred in finding that agency liable for the accident.
Moreover, even if we assume arguendo that the configuration of the intersection posed an unreasonable risk of harm, plaintiffs failed to additionally show that DOTD had actual or constructive knowledge of that condition and a sufficient opportunity to remedy the situation. Cf. Oster v. Dept. of Trans. & Devel., 582 So.2d 1285 (La.1991). See also Briggs, supra; Roberson, supra; McKinnie v. Dept. of Trans. & Devel., 426 So.2d 344 (La. App.2d Cir.1983), writ denied, 432 So.2d 266 (La.1983); Nix v. Brasly, 489 So.2d 1038 (La.App. 1st Cir.1986), all setting forth this requirement in a negligence case. See also LSA-R.S. 9:2800, requiring actual or constructive notice of a defect when strict liability is asserted against a "public entity."
In the case sub judice, the original defendants contended that the issuing of, or administrative process of securing, permits allowing access to the highway demonstrated notice to DOTD concerning the conditions that would arise. We disagree. *717 Neither the written requests nor the issued permits mention or imply the creation of a "truck stop," as later argued. Hence, the documents did not comprise a basis for anticipating the level of traffic volume or type of vehicles likely to frequent the store. Also, the actual business, regardless of its type, had not been opened a sufficient period of time to enable the department to evaluate any problem. Moreover, the intervening three or four days would not have afforded adequate opportunity to remedy any unreasonable risk of harm, had such been proved. Hence, for additional reasons, the state has not been shown to bear fault for the accident.
We thus find it unnecessary to address other arguments exculpating DOTD from liability.

Negligence of Morgan
The district judge found Morgan to be sixty percent at fault. Indeed, the original defendants conceded that he is liable to some extent. After reviewing the evidence, we find Morgan to be solely responsible.
A vehicle driver intending to turn left within an intersection shall yield to oncoming traffic that is "within the intersection or so close thereto as to constitute an immediate hazard." LSA-R.S. 32:122. See also LSA-R.S. 32:101 and 104. Further, the left turn has been held to be the most dangerous maneuver a motorist may execute, and great caution should always be taken. Harper v. State Farm Mutual Auto. Ins. Co., 511 So.2d 1283 (La.App.2d Cir.1987); Ebey v. Coggins, 474 So.2d 1352 (La.App.2d Cir.1985). Obviously, such a turn should be attempted only when it is ascertained that it can be safely completed. Strickland v. Pitts, 506 So.2d 1360 (La. App.2d Cir.1987); Hawkins v. Gilfoil, 483 So.2d 1082 (La.App.2d Cir.1986).
Individual drivers additionally have a duty to operate, control, and use their automobiles reasonably, and to maintain a proper lookout for hazards which might pose an unreasonable risk of harm. Foster v. Lafayette Ins. Co., 504 So.2d 82 (La. App.2d Cir.1987), writs denied, 505 So.2d 61, 65 (La.1987).
As mentioned previously, Morgan admitted cognizance of his obscured view of oncoming traffic. While he described his speed as "easing out," he obviously did not know his exact rate of movement. Dr. Ivey characterized that speed as 15-20 miles per hour.
Plaintiff testified that Morgan "came out of nowhere," and his passenger, Edward Ausberry, described Morgan's speed as "coming right on." Both characterizations indicate momentum greater than mere "inching out." For Morgan to attempt to complete his intended maneuver, in the manner and under the circumstances shown, represented an act of considerable irresponsibility. Simply stated, Morgan's lack of prudence and failure to exercise due care are clearly the sole cause of the accident. In finding otherwise, the trial court manifestly erred.

General Damages
The district court awarded general damages of $85,000. Plaintiff now contends that figure is too low and asks that it be increased by $40,000 to reflect loss of enjoyment of life.
In reviewing a general damages award made by a trial court, the record must clearly reveal that the fact-trier abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Ind., Inc., 341 So.2d 332 (La. 1976); Roberts v. Dept. of Trans. & Devel., 576 So.2d 85 (La.App.2d Cir.1991), writ denied, 581 So.2d 685 (La.1991). Consideration of other cases is relevant, but only to determine whether a contested award is greatly disproportionate to the mass of past awards for truly similar injuries and losses. Reck, supra; Crow v. Rambin, 569 So.2d 246 (La.App.2d Cir.1990). Hence, an appellate court must look initially to the circumstances of each case before resorting to prior awards for guidance. Reck, supra; Coco, supra.
Plaintiff, who asserted he never had similar back problems preceding the *718 accident, testified to experiencing loss of feeling in his back and legs immediately following the accident. He consulted with a family physician that same day, but the doctor did not perform a thorough examination. Although plaintiff proceeded to visit a chiropractor for some period of time, those treatments failed to alleviate his pain.
On March 18, 1988, Dr. Baer Rambach, a practicing orthopedic surgeon, performed extensive evaluations. X-rays revealed narrowing of the disc space between the fifth lumbar and first sacral, indicating either wear and tear changes to the intervertebral disc or deterioration of the disc. The examination indicated that plaintiff had sustained muscle and ligamentous strain to the lumbrosacral region. In the doctor's opinion, maximum medical recovery would require a year to eighteen months. Prescribed physical therapy did not prove successful.
Dr. Rambach referred the patient to Dr. Don Irby, a neurosurgeon, on May 13, 1988. Under his care, plaintiff submitted to additional examinations, including a lumbar myelogram, CAT scan, nuclear bone scan, EMG, and nerve conduction study. Impressions from the CAT scan indicated L4-5 disc protrusion, confirming the earlier findings of the myelogram. The doctor's studies concluded with the recommendation of a diskectomy at L4-5, which Dr. Irby subsequently performed on July 6, 1988. Plaintiff's recovery thereafter progressed uneventfully.
Dr. Irby acknowledged that the patient would continue to suffer some discomfort, in addition to certain limited restrictions of his ability to stand, stoop, squat, or perform some types of physical activity for prolonged periods of time. For these and other medical reasons, he assigned a twenty percent disability rating to plaintiff, whom he discharged on November 15, 1988.
In Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir.1989), a heavy equipment operator suffered a herniated disc at L3-4 and L4-5 in an automobile accident. The injury required a microsurgical laminectomy; total body disability equaled fifteen percent. That court affirmed an award of $95,000 in general damages.
The Third Circuit increased a general damage award to $100,000 in Mouton v. Bonnett, 520 So.2d 1145 (La.App. 3d Cir. 1987), writs denied, 521 So.2d 1138 (La. 1987). There, plaintiff's injuries included a herniated disc at L3-4 and bulging and degenerative L4-5. Treatment did not include surgery, but instead traction and chemonuclearlysis.
So too, in Lewis v. Macke Bldg. Serv., Inc., 524 So.2d 16 (La.App. 5th Cir.1988), writ denied, 532 So.2d 131 (La.1988), a plaintiff received $125,000 in general damages for a fifteen percent disability resulting from an automobile accident, with surgery for removal of two discs and fusion of two vertebra being required.
Likewise, in Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App.2d Cir.1984), this court affirmed a general damage award of $100,000 for injuries requiring disc surgery and a subsequent series of rehospitalizations. A physician diagnosed the plaintiff as being twenty percent disabled.
In the instant case, we cannot say the trial court abused its discretion in determining its award. A physically active person preceding the accident, plaintiff enjoyed such leisure activities as hunting, fishing, cutting wood, and breaking horses and mules. Clearly, he will suffer some curtailment of these endeavors. However, Dr. Irby emphasized his patient's continuing ability to experience most activities previously enjoyed. Additionally, although treatment involved surgery, a fairly low disability rating resulted. In sum, considering the entirety of the record, we do not find that the general damage grant requires modification.

Loss of Future Income
Plaintiff also questions the award of $67,012.19 for loss of future earnings. More specifically, it is maintained that the trial court failed to adequately recognize plaintiff's loss of earning capacity, and that *719 the amount granted should be increased to $214,384.
Earning potentialthe loss of capabilities obtained through training and experienceis the appropriate measure for estimating loss of earnings. Hobgood v. Aucoin, 574 So.2d 344 (La.1990); Philippe v. Browning Arms Co., 395 So.2d 310 (La. 1980); Folse v. Fakouri, 371 So.2d 1120 (La.1979). Factors to be considered are (1) plaintiff's physical condition before the injury, (2) plaintiff's past work history and consistency thereof, (3) the amount plaintiff probably would have earned absent the injury, and (4) the probability that plaintiff would have continued to earn wages over the remainder of his working life. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App.2d Cir.1987); Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App.2d Cir.1984). Plaintiff bears the burden of proving the connexity between his disability and decreased income. Higginbotham, supra; Winterrowd v. Traveler's Indem. Co., 452 So.2d 269 (La.App.2d Cir.1984), aff'd, 462 So.2d 639 (La.1985).
Under the present circumstances, only if an award is found to be abusively low may this court modify, and then any adjustment should only raise the figure to the lowest sum within the district court's discretion. Hobgood, supra; Reck, supra. Of course, our review must also be tempered by awareness that loss of future income is intrinsically insusceptible of calculation with mathematical certainty.
A pipeline construction worker since age 16, plaintiff, 52 years old and illiterate atthe time of the accident, had been employed in that capacity for only four months during 1987. In fact, due to economic fluctuations in the industry, his next previous pipeline job occurred in 1983, again apparently for only a brief period. He also had worked on a farm for a few months in earlier years. The trial court observed that, for the past seven years, plaintiff's reported income totaled $43,433.83, thus averaging $6,204.83 per year.
Bob Roberts, a certified vocational evaluation and work adjustment specialist, testified at trial on behalf of plaintiff. He concluded that plaintiff's limited academic abilities and narrow range of vocational development restricted prospects for any future employment, and also made him an extremely poor candidate for rehabilitation. Factoring in the disability, Roberts considered plaintiff unemployable.
Plaintiff additionally presented the testimony of Dr. Charles Bettinger, a statistician and economist. Based upon the claimant's maximum sustained earnings for 1979 through 1981, this expert projected future lost earnings totaling $214,384. That figure assumed, however, full-time employment as a pipeline laborer for an expected remaining work-life of 10.8 years.
The trial judge specifically rejected that assumption, noting plaintiff's employment in that capacity, during the six years preceding injury, totaled only seven months. Further, he opined that plaintiff could not be considered completely disabled, and that certain jobs were maintainable.
The weight to be given expert testimony is clearly dependent upon the professional qualifications and experience of the expert, and the facts upon which the opinion is based. Cf. Hobgood, supra. See also Swann v. City-Parish, 492 So.2d 1225 (La.App. 1st Cir.1986); Hayes v. Commercial Union Assurance Co., 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985). So, when based upon assumed facts not supported by the record, such an opinion may be rejected. Hobgood, supra.
Here, the full-time employment assumption is clearly dubious. Plaintiff produced no witnesses to verify the availability of full-time employment within the pipeline industry, even during better economic periods. Indeed, the greater likelihood appears to be to the contrary. Furthermore, although the rehabilitation specialist considered plaintiff to be unemployable, Dr. Irby placed no major restrictions on his activities. Thus, the trial court appears well justified in disregarding Dr. Bettinger's conclusions.
*720 Of course, as the district court found, the record reflects that plaintiff's ability to earn has been impaired. After averaging plaintiff's income for the seven years preceding trial, and then utilizing the 10.8 years life expectancy figure, the trial judge determined $67,012.19 to be appropriate with respect to loss of future income. We conclude that figure, however, inadequately reflects plaintiff's earning capacity.
Balancing the likelihood that plaintiff would have continued to earn some amount of wages over the remainder of his working life, and considering his past employment history, this court determines $90,000 to be the lowest figure the trial court could possibly have awarded. See Hobgood, supra; Reck, supra. That sum, generally taking into account plaintiff's average income for the past eight years, is a more accurate reflection of the impact to his earnings. Compare Rodgers v. Nat'l. Dealer Serv., Inc., 508 So.2d 1007 (La. App.2d Cir.1987), writs denied, 512 So.2d 1183 (La.1987) and 513 So.2d 1211 (La. 1987).

Future Medical Expenses
Plaintiff additionally argues the district court erred in not granting future medical expenses. Yet, as noted by the judge, none of the pleadings contained a request for such an award.
Medical expenses must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures more probably than not will be incurred. Crowther v. Kmart Corp., 568 So.2d 669 (La.App. 4th Cir.1990), writ denied, 571 So.2d 656 (La.1990). Neither Dr. Irby nor Dr. Rambach discussed whether plaintiff would need future medical care as a result of the injury sustained in the accident. Indeed, only the vocational specialist commented on any such need, merely stating that plaintiff would be a good candidate for physical therapy and a work hardening program. Accordingly, the possibility of future medical care is too speculative to justify an award.

Loss of Consortium
Mrs. Thomas likewise seeks an increase in her $7,500 award for loss of consortium. Compensable elements included in such a claim are loss of love and affection, society and companionship, sexual relations, performance of material services, right of support, aid and assistance, and felicity. Finley v. Bass, 478 So.2d 608 (La.App.2d Cir.1985).
Declaring they no longer engage in sexual activity due to his injury, plaintiff's spouse stated that after the accident, and postsurgery, she witnessed her husband suffering considerable pain. She testified he continues to "fuss a lot," and remains in bed a large portion of each day. She further indicated she has assumed all household chores, and has been required to work full-time to support the family.
The trial judge found that the testimony of the two plaintiffs justified a $7,500 consortium award. He additionally mentioned that no medical evidence substantiated some elements of the claim. We again find that this determination by the trial judge does not constitute an abuse of discretion. Compare Rodgers, supra; Finley, supra; Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3d Cir.1988).

Liability Insurance
The Thomases finally argue that the district court erred in dismissing Petrolane's insurer as a defendant. It is asserted that two policy endorsements, purporting to make Morgan's employer self-insured up to $1,000,000, violates Louisiana's compulsory liability insurance laws. We agree.
All vehicles registered in this state, save those specifically excluded by law, must be covered by either a policy of automobile liability insurance, a bond, or a certificate of self-insurance. LSA-R.S. 32:861. Minimum coverage limits of $10,000 for bodily injury or death to one person, $20,000 to two or more persons, and $10,000 for damage to property, are required by LSA-R.S. 32:900(B)(2). Further, exclusions contrary to expressed statutory policy are of no effect. Clarke v. Progressive *721 Am. Ins. Co., 469 So.2d 319 (La.App.2d Cir.1985); Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La.App.2d Cir.1983), writs denied, 440 So.2d 528, 754 (La.1983); Rudison v. Richard, 526 So.2d 369 (La.App. 4th Cir.1988); Mattingly v. State, Dept. of Health, 509 So.2d 82 (La. App. 1st Cir.1987), writ denied, 512 So.2d 461 (La.1987).
It should be carefully noted that we are not concerned here with an "excess" or "umbrella" contract. See generally, Lindsey v. Poole, 579 So.2d 1145 (La. App.2d Cir.1991), for a discussion of such coverage. Instead, the present policy is clearly intended to provide primary coverage, subject to a double $500,000 deductible per occurrence. Although the employer and insurer stated, in answering the petition and at trial, that self-insurance filled the void, no evidence established that Petrolane statutorily qualified for the classification of self-insurer under LSA-R.S. 32:1042. Hence, to the extent of compliance with the Compulsory vehicle liability Security Law, LSA-R.S. 32:861, 900, the trial court should have reformed the policy and awarded minimum liability coverage. See Mattingly, supra.

CONCLUSION
For these reasons, the judgment of the district court is, first, reversed insofar as it found DOTD liable; second, amended to reflect the driver, Morgan, solely responsible to plaintiffs; third, amended to increase the award for loss of future earnings; and, fourth, affirmed insofar as the other damage awards. Further, the dismissal granted to Fidelity and Casualty Company of New York is reversed, and the policy is reformed to comply with the Compulsory Motor Vehicle Liability Security Law, LSA-R.S. 32:861, 900.
REVERSED IN PART, AMENDED AND AFFIRMED IN PART, AND RENDERED.
*722 
ON REHEARING
PER CURIAM.
While denying a rehearing application by defendants, we granted a request by plaintiffs for an allocation of costs, such an expression having been inadvertently omitted from our original opinion. Therefore, in accordance with LSA-C.C.P. Art. 2164, *723 the three original defendants are now taxed for all costs, here and below.