614 So.2d 848 (1993)
Delores T. NEJAME and City Business Machines, Inc., Plaintiffs/Appellees,
v.
William M. HAMITER, American Manufacturers Mutual Insurance Company and State Farm Mutual Automobile Insurance Company, Defendants/Appellants.
No. 24,512-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
*849 Greenwald & Hallack by Joseph W. Greenwald, for plaintiffs/appellees.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, for defendants/appellants, William M. Hamiter and American Mfrs. Mut. Ins. Co.
Before NORRIS, STEWART and WILLIAMS, JJ.
*850 NORRIS, Judge.
William Hamiter and his insurer appeal a trial court judgment in favor of the plaintiffs, Delores Nejame and her employer, City Business Machines ("CBM"), for damages resulting from an automobile accident. Hamiter urges the trial court erred in using Mrs. Nejame's expert evidence to satisfy the burden of proof, and in awarding excessive damages. For the reasons expressed, we affirm.

Factual background
On the morning of May 17, 1990 Mrs. Nejame was driving a CBM station wagon on a business errand. The weather was fair and dry. Mrs. Nejame headed west on Jordan Street towards its intersection with Centenary Boulevard. According to Mrs. Nejame, she slowed from 15 or 20 m.p.h. to about 10 m.p.h. to accommodate a dip in the road; her vision was unobstructed and she had the green light. She entered the intersection and had almost cleared it when the back of the station wagon was hit. Mrs. Nejame was unable to brake the spinning station wagon; it jumped the curb on the southwest corner of the intersection and came to rest near a house. She testified that she never saw the other car before impact.
Hamiter was also on a business errand that morning, driving his wife's 1983 Camaro south on Centenary Blvd. He testified that before Jordan St. there is a slight hill which he climbed "going 30 miles per hour and decreasing"; his light was green. Some 20 feet before he reached the intersection he noticed a station wagon crossing. He testified that he started to hit his brakes, but the impact occurred before he could do so. He described the impact as the front left side of his car striking the front right side of the station wagon; then the rears of the vehicles crashed together. The Camaro stopped in the southwest portion of the intersection.
Immediately after the collision, each driver accused the other of running the red light.
Mr. Ray Herd, an accident reconstruction expert, testified at trial for the plaintiffs. He had reviewed the accident report and the drivers' depositions, and examined the scene. He testified that Centenary Blvd. is 12' wide on the west (southbound) side and 24' wide on the east (northbound) side; Hamiter was driving in the west (southbound) lane. Impact occurred when Mrs. Nejame was 3' west of the double yellow line, or 27' into the intersection, and Hamiter was only 3' into it; thus Mrs. Nejame was much further into the intersection. Upon impact the station wagon traveled 58' from the point of impact, whereas the Camaro went only 35' and stayed on the pavement. Because both vehicles went a good distance south of the impact, but not very much west of it, Mr. Herd concluded that Hamiter's Camaro had "substantially more speed" than Mrs. Nejame's station wagon. Assuming a deceleration factor of .4 and that each vehicle weighed about 3,200 lbs., Mr. Herd calculated Hamiter's speed before impact at 45.5 m.p.h., and Mrs. Nejame's at 16.1 m.p.h. At these speeds, Hamiter would have been 170' north of the intersection when Mrs. Nejame started to cross, giving him a clear view for two seconds before impact. Allowing .75 seconds to perceive the hazard and .75 seconds to react, Mr. Herd testified that Hamiter could have taken evasive action in time enough to avoid the accident by using medium brake pressure. R.p. 145. Mr. Herd disputed Hamiter's testimony in deposition that he was going only about 35 m.p.h., as this was not supported by the placement of the vehicles and by his calculations; however, even using Hamiter's slow estimate of 35 m.p.h., and Mrs. Nejame's slow estimate of 10 m.p.h., Mr. Herd still concluded that braking would have slowed the Camaro enough that by the time he reached the intersection, "she probably would have been gone." R.p. 153.
Mrs. Nejame testified that as a result of the accident she had bruises all over her body, a swollen neck from the pressure of her shoulder harness, cuts above her eyebrows and a knot on her right knuckle. Later she began dropping things and had trouble lifting anything heavier than a cup of coffee; this, with general aches and *851 stiffness, made her daily routine difficult. CBM gave her a driver for a while to assist her business calls. Therapy brought her some improvement but she still complains of numbness in her left hand and a dull ache in her neck. Dr. Marco Ramos, a neurosurgeon, treated her but by June 1991 was concerned enough about her lack of progress to order an MRI. This revealed a flattening spinal cord, atrophy and rather severe spondylosis of the C3-4, C4-5 and C5-6 level. This is part of an ongoing process that was aggravated by the accident. Dr. Ramos recommends surgery to fuse the three spinal levels (leaving a residual impairment of 15% to 20%), but Mrs. Nejame has thus far avoided surgery in the hopes that her condition would improve on its own.

Action of the trial court
By written opinion the trial court commented that it was in the "most difficult situation," two credible and candid witnesses with mutually exclusive and irreconcilable versions of how the accident occurred, citing Miller v. Leonard, 588 So.2d 79 (La. 1991). The court found Mr. Herd's analysis supported by the facts and not rebutted by any other testimony; thus the plaintiffs presented sufficient evidence to create a preponderance of evidence on the issue of liability. The court also found that Mrs. Nejame was not comparatively negligent, as she was entering the intersection when Hamiter was at least 100' away.
As for damages, the court accepted Mrs. Nejame's complaints of cuts, abrasions, and a contusion to her shoulder, a cervical strain resulting in objective findings sufficient to warrant probable future major surgery with residual impairment. The court awarded $60,000 for general damages and $3,500 for future medical expenses. Though the evidence was not sufficient to establish a claim for past or future lost wages, it did show a certain diminution of earning capacity, which the court valued at $10,000. Thus judgment was rendered in favor of Mrs. Nejame for a total of $73,500. Judgment was also rendered in favor of CBM for $4,900 for its property damage claim, and in favor of Louisiana Retailers (CBM's workers compensation carrier) in the stipulated amount of $2,923 on a subrogation claim.

Discussion: Liability
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong; in the event of conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed upon review even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985).
The factfinder is entitled to accept expert testimony unless it is patently unsound, and has broad discretion to assign appropriate effect and weight to any expert testimony. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990).
In civil suits the plaintiff bears the burden of proving negligence of the defendant by a preponderance of the evidence. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). In the recent case of Miller v. Leonard, supra, cited by the trial court and argued by Hamiter on appeal, the Supreme Court reiterated the burden of proof by holding that in the event of conflicting testimony, the trial court should attempt to reconcile it. If this is not possible, the court should weigh the probabilities or improbabilities of the respective statements in light of the witnesses' capacity, opportunity or incentive for observation, the amount of corroboration (if any), and the degree of proof required. 588 So.2d at 83. The Supreme Court further stated that in a case of reconventional demands, "truly balanced" evidence between "opposing plaintiffs" does not meet the burden of proof and counsels in favor of dismissing both actions.
*852 We note at this point that the instant case is not one of opposing plaintiffs; Hamiter's reconventional demand was dismissed with prejudice prior to trial. R.p. 55. Thus we do not find the "equipoise" discussion in Part VI of Miller applicable to this case. Simply put, Mrs. Nejame had to produce a preponderance of evidence, and the issue is whether the trial court was plainly wrong to find that she succeeded.
Hamiter contends the trial court erred in using Mr. Herd's expert testimony to tilt the balance of evidence in favor of Mrs. Nejame. This is so, they argue, because Mr. Herd's testimony was inconsistent and based on inaccurate information: his estimated speeds of the vehicles do not match those of the drivers, and his calculations are ungrounded as he did not survey the accident scene for more than a year after it occurred.
We have closely reviewed the evidence and find that Mr. Herd's calculations of the parties' speeds are not greatly inconsistent with the parties' own accounts. Mrs. Nejame estimated she had slowed to between 10 and 15 m.p.h.; Mr. Herd's estimate of 16.1 is easily consistent with her speed. When he spoke to the investigating officer, Hamiter apparently estimated his speed at 35 m.p.h.; by the time of trial, he testified only that he was cresting the hill on Centenary at "30 m.p.h. and decreasing." Notably, he had crested the hill and was coming back down when he reached Jordan, and he admitted he was "not a good judge of distance." No one disputed that in the collision between these vehicles of equal weight, the southward pull was much greater, suggesting that Hamiter's speed must have been much greater than Mrs. Nejame's. Under the circumstances, Mr. Herd's reconstruction of the accident was reasonable, even though it did not precisely square with all of Hamiter's testimony, and the trial court was clearly entitled to accept it. This expert evidence corroborated Mrs. Nejame's testimony and pushed the scales in her favor, supplying the necessary preponderance of evidence.
The trial court was not plainly wrong in finding that Hamiter had ample opportunity to avoid the accident and was negligent in failing to maintain a proper lookout, timely apply his brakes or take other evasive action. This argument lacks merit.

Quantum
In a personal injury suit the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. American Motorist Ins. Co. v. American Rent-All, 579 So.2d 429 (La.1991). A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct; where a defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
When damages are insusceptible of precise measurement, much discretion is left to the trial court to assess reasonable damages. La.C.C. art. 1999. Before the court of appeal can disturb an award of general damages, the record must clearly reveal that the trial court abused its discretion. Coco v. Winston Indus. Inc., 341 So.2d 332 (La.1976). The question for the appellate court is not whether a different award may have been more appropriate but rather whether the trial court's award can be reasonably supported by the record. Marshall v. A & P Food Co. of Tallulah, 587 So.2d 103 (La.App. 2d Cir.1991).
The burden of proof in a claim for future medical expenses and loss of future earnings or earning capacity is a preponderance of the evidence. Jordan v. Travelers Ins. Co., supra. Awards will not be made for future medical expenses which may or may not occur, in the absence of medical testimony that they are indicated, and setting out their probable cost. Hunt v. Board of Sup., LSU, 522 So.2d 1144 (La.App. 2d Cir.1988).
Hamiter urges the trial court's award of $60,000 in general damages is excessive. The evidence, however, easily shows that Mrs. Nejame sustained serious injuries in the accident, and these interfered *853 with her work as well as her normal, daily activities. While she missed only a day and a half of work immediately after the accident, she had to leave early on several occasions because she felt ill. Although her condition had improved over the first six months, with treatment and therapy, she still has constant discomfort in her neck and intermittent problems with her shoulder. Dr. Ramos, her treating neurosurgeon, diagnosed her with severe cervical spondylosis which will ultimately require major surgery. He testified, in essence, that the current symptoms were made severe by the accident. Even if the surgery is successful, Mrs. Nejame will still have noticeable physical impairment. Under the circumstances, we do not consider $60,000 an excessive award.
Hamiter also contests the future medicals. Dr. Ramos testified that his fee for the recommended surgery was approximately $3,500 to $4,000, not including other necessary expenses like hospital, physical therapy and medication. Since Dr. Ramos established that this surgery was medically necessary and its probable cost, we will not disturb the award.
Finally, Hamiter contests the award for lost earning capacity. Such an award by its nature does not lend itself to precise valuation, but rests with the trial court's sound discretion provided there is a factual basis for the award. Mrs. Nejame testified that she was employed as a salesperson for CBM; she makes numerous daily service calls and must carry office equipment with her. She receives an annual base salary of $17,000 plus commission. Following this accident, she was confined to the office for a period of time, unable to make calls. Although her condition has improved, she could not carry her equipment and had to slow her pace. She testified that her injuries had definitely diminished her income by $8,000 so far. It is reasonable to find that a plaintiff who can no longer pursue her business as vigorously and energetically as she did prior to the accident has sustained lost earning capacity. See Hobgood v. Aucoin, 574 So.2d 344 (La.1990). In light of Mrs. Nejame's current physical condition and medical prognosis, the trial court was not plainly wrong to find lost earning capacity and did not abuse its discretion in awarding $10,000.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are assessed to defendants, William M. Hamiter Jr. and American Manufacturers Mutual Insurance Company.
AFFIRMED.