JjGAUDIN, Judge.
In this medical malpractice case against a podiatrist, judgment was rendered on May 4, 1993 against plaintiffs after a bench trial in the 24th Judicial District Court. We affirm.
The doctor, Samir C. Mowad, allegedly injected cortisone into the ankle of Mrs. Jack Francis. Dr. Mowad testified that the injection was into the sole of Mrs. Francis’ foot and that the injection was neither in nor close to the medialis malleolus, the inside ankle bone.
*772 The outcome of this case — i.e., Dr. Mow-ad’s possible negligence — turned on a finding of fact. The trial judge found that the injection was as Dr. Mowad described, in the sole and not the ankle.
Mrs. Francis died of a heart attack on April 15, 1992, leaving her husband as the sole plaintiff-appellant.
Dr. Mowad first saw Mrs. Francis on July 15, 1985 and was of the opinion that she was suffering from plantar fasciitis, inflammation of the bottom of the foot. On July 22nd, one week later, Dr. Mowad injected cortisone.
12Mrs. Francis telephoned Dr. Mowad on August 1, 1985 and said that she had injured her ankle in a fall four days earlier, on July 28th. Dr. Mowad saw Mrs. Francis on August 5, 1985. Finding no fracture, Dr. Mow-ad applied a fiberglass cast for a sprained ankle. Dr. Mowad testified that there was no evidence of redness or an infection when the cast was put on.
Several days later, Mrs. Francis telephoned Dr. Mowad and told him that the cast was causing considerable pain. On August 12,1985, the cast was removed by Dr. Steven Zichichi, a podiatrist who was covering for Dr. Mowad, who was out of town. When the cast was taken off, an infection in the ankle was found, identified as staphylococcus bacteria. This is a fast-moving infection, according to most of the medical evidence in the record, which would have occurred and/or manifested itself within 24 to 72 hours of the July 22nd cortisone injection if in fact caused by or related to this injection.
On August 13th, Mrs. Francis telephoned Dr. Zichichi and told him that her foot was still swollen and that the redness seemed to be going up her leg. Dr. Zichichi advised her to come and see him or else go to a hospital emergency room. Mrs. Francis then went to the East Jefferson Hospital emergency room that day, where she saw Dr. Vaclav Hamsa.
The three podiatrists who sat on the medical review panel, Drs. William Dabdoub, Si-meon Issacs and Cyril Scully, testified at trial. Each said that the July 22nd injection could not have caused an infection that sat dormant for more than 72 hours and each stated that Dr. Mowad did not breach any standard of care in his treatment of Mrs. Francis.
Mr. Francis does not contend on appeal that either the placement or subsequent management of the cast on Mrs. Francis’ foot caused the ankle infection; instead, he argues that the ankle was infected before the cast was applied.
| aDr. Zichichi said that the type of infection Mrs. Francis had could have been caused by the cast although, in his opinion, the cast had been properly applied by Dr. Mowad. Dr. Zichichi prescribed an antibiotic for possible cellulitis.
Mrs. Francis did not tell Dr. Zichichi she suffered from diabetes. Dr. Zichichi said that persons with diabetes are much more prone to infections. Dr. Hamsa, the orthopedic surgeon who saw Mrs. Francis at East Jefferson Hospital, agreed with this.
Dr. Hamsa found massive cellulitis on August 13, 1985, and he made an incision and drained the ankle infection a week later, on August 20th. There were little white particles in the drainage which are not normally produced by the body, Dr. Hamsa said; however, he could not say that Dr. Mowad’s injection was improper.
Dr. William Mogabgab, an internist with a subspecialty in infectious diseases, testified for appellant. Dr. Mogabgab never saw or examined Mrs. Francis; his testimony was based on his examination of medical records and on what he understood the facts and circumstances to be. Among the medical facts he assumed was the existence of a little red circle near the ankle joint marking the spot where the cortisone injection allegedly was made. On cross examination, however, Dr. Mogabgab admitted that nowhere in any medical record is there a reference to such a little red circle. Appellant’s counsel told Dr. Mogabgab about the little red circle, based on what Mrs. Francis had told him. Dr. Mogabgab said:
“I have been hearing about it (the little red circle) so long I thought it was in the record.”
Nonetheless, Dr. Mogabgab said that the cortisone injection in the ankle caused the infection. This opinion, apparently, once the location and/or existence of a small red circle was questioned, was based on the presence of *773 little white particles in the drainage following Dr. Hamsa’s incision. Dr. Mogabgab stated that cortisone is the “only pthing I know” that causes little white granules; Dr. Hamsa testified otherwise, saying that white particles could be caused by any number of things. Other than Dr. Mogabgab’s testimony, there is no pathology report or anything else in this record positively identifying the source of the little white particles in the pus drained from Mrs. Francis’ ankle.
Dr. Mogabgab admitted that staphylococcus infections are common and often occur despite all proper precautions taken by a treating physician. He also said that patients like Mrs. Francis with diabetes are much more prone to infections and that their infections are worse.
In 1990, after studying all of the medical records for the first time, Dr. Mogabgab then said that, in his opinion, the fiberglass cast caused an abrasion of the skin, which became infected. Dr. Mogabgab explained that “... he might have thought that at the time,” but that “... after reflecting on this case and looking at the records more and more and thinking about it ... it seems to me that the things were intertwined, and something was happening in that ankle ...” Dr. Mogabgab further explained that while the cast abrasion caused massive cellulitis which “moved way up her leg,” this could be distinguished from the infection in the ankle joint itself.
In his assigned “Reasons for Judgment,” the trial judge stated:
“Rita Francis sought the service of Dr. Mowad, a podiatrist, for pain she was experiencing in her right foot.
“After examinations and diagnosis, Dr. Mowad’s method of treatment was to inject Mrs. Francis’ foot with cortisone.
“Mrs. Francis alleges her ankle was injected, which caused an infection. Dr. Mowad testified that the injection was into the sole of Mrs. Francis’ foot.
“This Court finds Dr. Mowad’s testimony more credible.
I ¿‘Further, plaintiffs’ experts have failed to prove by a preponderance of the evidence that Dr. Mowad’s treatment of Mrs. Francis did not meet the requisite standard of care.”
When there are two permissive views of the evidence, as there are here, a trial judge’s choice cannot be manifestly erroneous. See Nejame v. Hamiter, 614 So.2d 848 (La.App. 2 Cir.1993); also Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), wherein the Supreme Court of Louisiana stated at page 972:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed ... even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
This record contains substantial evidence in support of Dr. Mowad’s assertion that his cortisone injection was into the sole of Mrs. Francis’ foot. This being so, a reversal of this trial court judgment would be an inappropriate substitution of one allowable view, .ours, for that of the trial judge’s.
We affirm the judgment of May 4, 1993 at appellant’s costs.
AFFIRMED.