liKNOLL, Judge.
This case involves the review of a jury’s award of general damages and the jury’s decision not to award special damages for disability, future medical expenses, and loss of future earning capacity. Gladue Istre, the father of Chad Istre, a minor, filed suit against David Bratton, Sr., David Bratton, Jr., and the Bratton’s automotive liability insurer, Horace Mann Insurance Company, for injuries Chad suffered when the Bratton vehicle rear-ended a stopped vehicle at a speed of approximately 40 miles per hour. Liability was stipulated and only the question of quantum was presented to the jury. The jury awarded $27,500 for Chad’s pain and *1207 suffering and reimbursed him for the medical expenses incurred at the time of trial, $6,667.40.
The Istres contend on appeal that: (1) the jury’s general damage award was abusively low; and, (2) the jury was manifestly erroneous in denying Chad’s damage claims for physical injury or disability, loss of future earnings, and future medical 12expenses. We affirm in part, amend in part, and reverse in part.
FACTS
On April 6, 1991, Chad, who was 14 years of age, was riding in the passenger seat of an automobile owned by David Bratton, Sr., and driven by Chad’s best friend, David Bratton, Jr., when the Bratton auto struck the rear of a vehicle that was stationary in the left-turn lane. Although Chad was wearing a lap belt, he hit his head on the dashboard when he was thrown forward. As a result of the accident, Chad suffered a laceration on his forehead, together with compression fractures of the spine, two non-displaced transverse fractures of the spine at the L2 and L3 levels, and an epidural hematoma. Chad was hospitalized at University Medical Center (University Medical) in Lafayette for 3 to 4 days and remained bedridden at home for 2⅜ months.
Although no one from University Medical testified about the extent of his follow up care there, Chad and his mother stated that he visited the hospital clinic intermittently following the accident.[1] In February of 1992, approximately ten months after the accident, Dr. John Humphries, an orthopedist, examined Chad one time for purposes of evaluating a settlement petition pending before the trial court; he reviewed the diagnostic films taken at University Medical, confirmed the compression fractures and transverse process fractures at L2, L3, and found that Chad had a Class V back due to spondyloly-sis [2]. Based upon these findings, the Istres withdrew from the settlement offer and filed this suit.
Chad was next examined on April 24,1992, by Dr. Stuart I. Phillips, an ^orthopedist. Dr. Phillips diagnosed Chad as having low back muscle spasms, pain, an epidural hema-toma, anterior wedging of one vertebra, a unilateral spondylolysis at the L5 level, and a spondylolisthesis[3] at the L5 level. He opined that Chad’s spondylolysis was traumatically caused by the accident and that this back defect later manifested itself as spondylolisthesis. As of the time of trial, Dr. Phillips was still treating Chad and in the last examination of Chad, approximately three months earlier, Dr. Phillips observed muscle spasms in Chad’s lower back. Considering continued pain and inability to heal, Dr. Phillips assigned Chad a 20% disability of the back, restricted his activities, and opined that he would have to decide whether future surgery was needed when Chad was 19 or 20 years of age.
Dr. Charles Aprill, a radiologist to whom Dr. Phillips referred Chad, conducted various radiological tests. He disagreed with Dr. Phillips’ opinion that the accident was the cause of spondylolysis, finding instead that this defect significantly predated the accident. However, Dr. Aprill confirmed Dr. Phillips’ diagnosis that Chad also suffered a mild spondylolisthesis.
Dr. James Charles McDaniel, an orthopedist, examined Chad and reviewed the diagnostic films at the request of the defendants. He saw Chad only once. He opined that Chad did not have a spondylolisthesis and was unsure that he had a spondylolysis. He concluded that Chad did not require medical treatment and that his activities should not be restricted.
The only other physician to testify was Dr. J.J. Laborde, a radiologist employed by the defendants to perform additional radiological testing. Dr. Laborde acknowledged the *1208 presence of Chad’s spondylolysis and agreed with Dr. Aprill that it predated the accident. Dr. Laborde also conducted an experiment in an attempt to |4show that Dr. Aprill’s selection of the angle at which the MRI was taken resulted in the appearance of vertebral slippage when none in fact existed. Based on his experiment, Dr. Laborde, in contradiction of Dr. Aprill, opined that Chad did not have a spondylolisthesis.
QUANTUM
The Istres contend that the jury’s award of general damages in the amount of $27,500 is abusively low. They argue that the jury either ignored or improperly discounted Dr. Phillips’ conclusion that the accident caused or aggravated Chad’s spondylo-lysis.
When damages are insusceptible of precise measurement, much discretion is left to the trial court to assess reasonable damages. LSA-C.C. Art. 2324.1. Before the appellate court can disturb an award of general damages, the record must clearly reveal that the trial court abused its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Further elaborating in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, — U.S.-, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the court noted that the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. The question for the appellate court is not whether a different award may have been more appropriate, but rather whether the trial court’s award can be reasonably supported by the record. Nejame v. Hamiter, 614 So.2d 848 (La.App. 2nd Cir. 1993).
As highlighted in the thumbnail sketch of facts hereinabove, the area of greatest disagreement at trial involved the determination of whether Chad had a spondylolithic defect at the L5-S1 level prior to the accident, whether the accident 15aggravated that condition, and whether the accident caused him to suffer spondylolisthesis.
In a personal injury suit the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. American Motorist Ins. Co. v. American Rent-All, 579 So.2d 429 (La.1991). A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct; where a defendant’s negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation. Pemiciaro v. Brinch, 384 So.2d 392 (La.1980).
The Istres contend that the jury erred in failing to give greater weight to the testimony of the treating orthopedist, Dr. Phillips. It is well settled that the testimony of the treating physician is entitled to greater weight than the testimony of a physician who examines the patient only once or twice. Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1255 (La.1989). However, for such expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record. Russ v. Jones, 580 So.2d 1098 (La.App. 4th Cir.1991).
In the case sub judice, Dr. Phillips opined that the automobile accident of April 6,1991, either caused Chad to have a spondylolysis and an accompanying spondylolisthesis or that it aggravated an asymptomatic spondy-lolithic spinal condition that Chad had prior to the accident. Dr. Phillips testified that he premised his opinion of causation on two factors: (1) Chad continuously experienced low back pain after the accident, and (2) Chad was unable to get well.
With regard to the first factor utilized by Dr. Phillips in the formulation of his medical opinion, the record shows that Chad never experienced back pain and never |6sought medical treatment of any back defect prior to the accident at issue. The testimony is undisputed that prior to the accident, Chad played football with his friends, bicycled up to 20 miles at a time, cut grass for approximately seven customers, bussed tables at two restaurants part-time, and took long walks with his mother. In contrast to his pre-accident physical condition, Chad testified that he suffered pain, tingling, and numbness *1209 in his back immediately after the accident, and stated that since the accident, he has either had to eliminate or limit his pre-acci-dent activities because of the pain he suffers in his back. As of the time of trial, Chad stated that he experienced low back pain that became more pronounced as he increased his activities.
Dr. Aprill, the radiologist who conducted Chad’s MRI and CAT scan at the request of Dr. Phillips, opined that Chad’s spondylolysis predated the accident. When he was asked to address Dr. Phillips’ opinion that the accident caused the spondylolisthesis, Dr. Aprill stated:
This young man had a developmental condition which predated his accident .. and that is a unilateral spondylolysis at L-5 on the left. There was buttressing of bone on the right, making the right side of the spine relatively rigid. I see on his current films a forward slip of L-5 on S-l, not a very big slip ... This is called a spondylo-listhesis. I offer as a hypothesis that at the time of the incident of the injury, force applied to the spine was eccentric because it was fixed on the right and weak on the left, so there was a rotatory force of the left side of the spine forward. This would damage the disc annulus and whatever support in the form of ligaments and soft tissue, fibrous tissues at the spondylolysis. This would damage or could damage those structures such that if it was stable before, it might be unstable now. And if unstable after the accident, this could allow the L-5 vertebra to slip forward on the left side and be a source of pain. Those are conclusions that are reasonable to draw.
With regard to the second prong which supported Dr. Phillips’ medical opinion that the accident caused Chad’s spondylolithic problems, the record shows that Chad’s hback condition had not improved with the passage of time. Dr. Phillips testified that at his last examination of Chad three months prior to trial, Chad was still in pain and that he objectively viewed muscle spasms in Chad’s lower back. As a result of his diagnosis, Dr. Phillips stated that Chad can no longer participate in contact sports, that he is limited to lifting no more than 50 pounds at a single time, that he is limited to lifting 25 pounds on a repetitive basis, and that he will have pain for the remainder of his life.
From our review of the record, we find that the jury clearly abused its discretion in making such an abusively low general damage award. As the orthopedist who treated Chad’s back condition, observed his disability, and provided well-founded evidence of the causative effect of the accident, Dr. Phillips’ opinion was entitled to greater weight than that of Dr. McDaniel. Likewise, after reviewing Dr. Laborde’s testimony on his experiment on the angling of the radiographic equipment, the only criticism of objective radiological evidence, we cannot say that Dr. Aprill’s objectively verified findings of vertebral slippage should have been ignored.
In reaching this conclusion, we find it of no moment that at the time that Chad was seen by Dr. Humphries he did not have complaints of pain. We find it important to remember that Chad was riding with his friend, David Bratton, Jr., at the time of the accident and as shown by his testimony, the filing of a legal action against the family of his best friend was not what he wanted to do. Likewise, at this juncture it is important that we note the testimony of Dr. Lyle LeCorgne, a clinical psychologist who examined Chad after the accident. Dr. LeCorgne testified that since Chad was not a good student he got his self-esteem from being macho. As a result of this character trait, Dr. LeCorgne testified that Chad has trouble admitting ^deficiencies, problems, and pain; accordingly, he found that Chad had a tendency to minimize these problems caused by the accident. Considering this psychological picture of Chad, Dr. LeCorgne did not find it out of the ordinary that Chad would have minimized his complaints of pain to maintain his self-esteem and not alienate his friends. When we review the jury verdict in the case sub judice, it is clear that the jury failed to consider Chad’s testimony in the new light cast by Dr. LeCorgne’s expert observations.
Accordingly, considering Dr. Phillips’ assignment of a 20% impairment of the body as a whole, the pain Chad suffered from the laceration, the hematoma, the various fractures of the spine, and the pain attributable *1210 to the spondylolisthesis, all resulting from the accident, we find that the least amount that the jury could have awarded is $75,000.
SPECIAL DAMAGES
The Istres next contend that the jury was manifestly erroneous in not awarding Chad damages for future medical expenses as the result of his back defect and for the loss of earning capacity. The burden of proof in a claim for future medical expenses and loss of future earnings or earning capacity is a preponderance of the evidence. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). Awards will not be made for future medical expenses that may or may not occur, in the absence of medical testimony that they are indicated, and setting out their probable cost. Nejame, supra.
Dr. Phillips testified that since Chad’s spondylolisthesis is symptomatic, it was more probable than not that he would need surgery and that the projected cost would be between $35,000 and $50,000. He further admitted that because of Chad’s age at the time of the accident, he would have to wait for surgery until Chad’s bones had 19fimshed growing. When confronted with this medical prognosis, Chad testified that he would undergo the surgery if it would take away the pain in his back. Based on this evidence, we find that an award of $50,000 is appropriate for the cost of future medical expenses.
We next consider whether Chad is entitled to an award for loss of earning capacity. In Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979), the court stated:
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
In arriving at a monetary figure for loss of earning capacity it is proper to consider: the plaintiffs age, training, occupation, the average salary of a person of that occupation, employment opportunities, and the fact that the claimant was vigorous prior to the accident. Id.
In the present case, although Chad had not yet entered the labor force, he did perform manual labor during his high school years as a yardman and as a busboy at two restaurants. Since he felt that he was not academically gifted and that he would not pursue higher education, Chad stated that he had always wanted to follow in the footsteps of his father and uncles performing manual labor in the oilfield.
No economist testified about the loss of earning capacity that Chad suffered. Instead, the Istres presented the testimony of Glenn M. Hebert, a vocational rehabilitationist. Based on the physical restraints placed on Chad by Dr. Phillips, Chad’s attention deficit disorder, and his inability to retain knowledge, Hebert opined that Chad suffered a diminished earning capacity. He testified that had Chad’s back condition not been aggravated by the automobile accident, Chad could have earned [ipa minimum of $7.00 per hour in the oilfield; instead, he thought that Chad would now only be able to perform light duty work earning just the minimum wage. Based on varying estimations, Hebert opined that Chad’s loss of earning capacity, without consideration of any discounting of the sum for interest income from investment of the fund, ranged from $225,386 to $674,104.
The Brattons and Horace Mann presented the testimony of Dr. John Grimes as their vocational rehabilitation expert. Dr. Grimes testified that Chad would perform well in a vocational-technical school and that although he had trouble reading, he possessed good conceptualization skills. When viewing Chad’s attention deficit disorder, color blindness, and hearing deficiencies, problems not caused by the accident, Dr. Grimes stated that he would not have recommended placement of Chad in a hazardous work environment or around heavy machinery; accordingly, he questioned the availability of oilfield work for Chad even if he had not had the accident. Based upon completion of high school, a vo-tech school and adequate training, Dr. Grimes stated that although Chad *1211 would not be able to perform heavy duty work in the oilfield, he would suffer no loss of earning capacity.
After carefully reviewing the record, we find that the jury erred in failing to award Chad a monetary sum for loss of earning capacity. Considering the testimony presented, we find that an award of $125,000 will fully compensate Chad for his loss of earning capacity.
For the foregoing reasons, the jury’s award of medical expenses is affirmed, and the judgment of the trial court is amended to award Gladue Istre, on behalf of his minor son, Chad Istre, general damages in the sum of $75,000.
IT IS FURTHER, ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Gladue Istre, on behalf of his minor son, Chad Istre, and | nagainst David Bratton, Sr., David Bratton, Jr., and Horace Mann Insurance Company, in the amount of $50,000 for future medical expenses.
IT IS FURTHER, ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Gladue Istre, on behalf of his minor son, Chad Istre, and against David Bratton, Sr., David Bratton, Jr., and Horace Mann Insurance Company, in the amount of $125,000 for loss of earning capacity.
Judicial interest is awarded on all sums herein from date of filing of the petition for damages, until paid. Costs of the trial court and this appeal are assessed to the defendants.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND RENDERED.

.Dr. Rho Reina, a radiologist, was the only health professional at University Medical to testify. Her testimony was restricted to her interpretation of a bone scan taken of Chad during his hospitalization. She did not testify about his follow-up care.

. A defect in the interarticular part of the vertebra.

. Defined as a forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum.