# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #048

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinion handed down on the **23rd day of September, 2016**, is as follows:

**BY CLARK, J.**:

2015-C -1806    BRANDY LYNN FECKE, STEPHEN C. FECKE, AND KAREN FECKE v. THE
       C/W      BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
2015-C -1807    AGRICULTURAL AND MECHANICAL COLLEGE (Parish of E. Baton Rouge)

Accordingly, for the above reasons, the judgment of the court of
appeal is reversed insofar as it held Brandy was entitled to
legal interest on an award for future medical care and ordered
said interest had to be paid into the FMCF; affirmed insofar it
held Brandy was not entitled to recover attorney's fees and costs
from an award for future medical care prior to its placement into
the FMCF; and reversed insofar as it vacated Brandy's award for
loss of future earnings, and the trial court judgment awarding
loss of future earnings reinstated.
REVERSED IN PART; AFFIRMED IN PART; AND TRIAL COURT JUDGMENT
REINSTATED IN PART.

WEIMER, J., concurs in the result and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2015-C-1806

CONSOLIDATED WITH

No. 2015-C-1807

BRANDY LYNN FECKE, STEPHEN C. FECKE, AND KAREN FECKE

VERSUS

THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**CLARK, J.**

These consolidated writs arise from a personal injury suit brought pursuant

to the Louisiana Governmental Claims Act, La. Rev. Stat. 13:5101 *et seq.*, with

specific reference to La. Rev. Stat. 13:5106[1].   The plaintiffs, Brandy Lynn Fecke,

---

[1]La. Rev. Stat. 13:5106, provides:

A. No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.

B. (1) The total liability of the state and political subdivisions for all damages for personal injury to any one person, including all claims and derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number of suits filed or claims made for the personal injury to that person.

(2) The total liability of the state and political subdivisions for all damages for wrongful death of any one person, including all claims and derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number of suits filed or claims made for the wrongful death of that person.

(3)(a) In any suit for personal injury against a political subdivision wherein the court, pursuant to judgment, determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that a reversionary trust be established for the benefit of the claimant and that all medical care and related benefits incurred subsequent to judgment be paid pursuant to the reversionary trust instrument. The reversionary trust instrument shall provide that such medical care and related benefits be paid directly to the provider as they are incurred. Nothing in this Paragraph shall be construed to prevent the parties from entering into a settlement or compromise at any time whereby medical care and related benefits shall be provided, but with the requirement of establishing a reversionary trust.

(b) Any funds remaining in a reversionary trust that is created pursuant to Subparagraph (3)(a) of this Subsection shall revert to the political subdivision that established the trust, upon the death of the

claimant or upon the termination of the trust as provided in the trust instrument. The trustee may obtain the services of an administrator to assist in the administration of the trust. All costs, fees, taxes, or other charges imposed on the funds in the trust shall be paid by the trust. The trust agreement may impose such other reasonable duties, powers, provisions, and dispute resolution clauses as may be deemed necessary or appropriate. Disputes as to the administration of the trust can be appealed to the district court. Nothing in this Paragraph shall preclude the political subdivision from establishing other alternative funding mechanisms for the exclusive benefit of the claimant. The terms and conditions of the reversionary trust instrument or other alternative funding mechanism, prior to its implementation, must be approved by the court. The parties to the case may present recommendations to the court for the terms and conditions of the trust instrument or other funding mechanism to be included in the order. Upon request of either party, the court shall hold a contradictory hearing before granting a final order implementing the reversionary trust or the alternative funding mechanism.

(c) In any suit for personal injury against the state or a state agency wherein the court pursuant to judgment determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that all medical care and related benefits incurred subsequent to judgment be paid from the Future Medical Care Fund as provided in R.S. 39:1533.2. Medical care and related benefits shall be paid directly to the provider as they are incurred. Nothing in this Subparagraph shall be construed to prevent the parties from entering into a settlement or compromise at any time whereby medical care and related benefits shall be provided but with the requirement that they shall be paid in accordance with this Subparagraph.

C. If the state or a state agency or political subdivision is held liable for damages for personal injury or wrongful death, the court shall determine:

(1) The amount of general damages exclusive of:
    (a) Medical care.
    (b) Related benefits.
    (c) Loss of earnings and/or support.
    (d) Loss of future earnings and/or support.

(2) The amount of medical care, related benefits and loss of earnings and/or support to date of judgment.

(3) Whether the claimant is in need of future medical care and related benefits and the amount thereof; and

(4) Whether there will be a loss of future earnings or support, and the amounts thereof.

D. (1) "Medical care and related benefits" for the purpose of this Section means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services, and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services.

(2) "Loss of earnings" and "loss of support" for the purpose of this Section means any form of economic loss already sustained by the claimant as a result of the injury or wrongful death which forms the basis of the claim. "Loss of future earnings" and "loss of future support" means any form of economic loss which the claimant will sustain after the trial as a result of the injury or death which forms the basis of the claim.

(3) "Reversionary trust" means a trust established by a political subdivision for the exclusive benefit of the claimant to pay the medical care and related benefits as they accrue, including without limitation reasonable and necessary amounts for all diagnosis, cure, mitigation, or treatment of any disease or condition from which the injured person suffers as a result of the injuries, and the *sequelae* thereof, sustained by the claimant on the date the injury was sustained. The trustee shall have the same fiduciary duties as imposed upon a trustee by the Louisiana Trust Code. Nothing herein shall limit the rights of claimants to contract with respect to attorney fees and costs.

(4) "Derivative claims" include but are not limited to claims for survival or loss of consortium.

E. The legislature finds and states:

(1) That judgments against public entities have exceeded ability to pay on current basis.

(2) That the public fisc is threatened by these judgments to the extent that the general health, safety, and welfare of the citizenry may be threatened.

and her parents Stephen and Karen Fecke, and the defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU Board"), sought review of the court of appeal's judgment. We granted certiorari to interpret specific provisions within the Act including La. Rev. Stat. 39:1533.2[2], and to resolve three issues: (1) whether a plaintiff is entitled to legal interest on an award for future medical care paid directly to the health care provider from the Future Medical Care Fund ("FMCF"); (2) whether a plaintiff is entitled to recover attorney's fees and costs from an award for future medical care prior to its placement into the FMCF; and (3) whether a plaintiff who was unemployed at the time of the injury is entitled to recover the loss of future earnings. *Fecke v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,* 2015-1806 (La. 2/19/16), 186 So. 3d. 1177, and 2015-1807 (La. 2/19/16), 186 So. 3d. 1175.

---

(3) That the limitations set forth in this Section are needed to curb the trend of governmental liability abuses, to balance an individual's claim against the needs of the public interests and the common good of the whole society, and to avoid overburdening Louisiana's economy and its taxpaying citizens with even more new and/or increased taxes than are already needed for essential programs.

(4) That the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the constitution.

F. The provisions of this Section shall not apply to claims arising under R.S. 40:1299.39 *et seq.*

[2] La. Rev. Stat. 39:1533.2 provides:

A. There is hereby established in the state treasury the "Future Medical Care Fund", hereinafter referred to as the "fund". The fund shall consist of such monies transferred or appropriated to the fund for the purposes of funding medical care and related benefits that may be incurred subsequent to judgment rendered against the state or a state agency as provided by R.S. 13:5106 and as more specifically provided in R.S. 13:5106(B)(3)(c). All costs or expenses of administration of the fund shall be paid from the fund.

B. The fund shall be administered by the treasurer on behalf of the office of risk management for the benefit of claimants suing for personal injury who are entitled to medical care and related benefits that may be incurred subsequent to judgment. Except for costs or expenses of administration, this fund shall be used only for payment of losses associated with such claims. At the close of each fiscal year, the treasurer shall transfer to the Future Medical Care Fund from the Self-Insurance Fund an amount equal to the monies expended from the Future Medical Care Fund during that fiscal year. Monies in the fund shall be invested by the state treasurer in the same manner as monies in the state general fund. Interest earned on investment of monies in the fund shall be deposited in and credited to the fund. All unexpended and unencumbered monies in the fund at the end of the fiscal year shall remain in the fund.

3

For the reasons set forth below, we now hold a plaintiff who is awarded future medical care pursuant to La. Rev. Stat. 13:5106(B)(3)(c) is not entitled to legal interest on the award and may not recover attorney's fees or costs from the award prior to its placement into the FMCF. We further hold a plaintiff who was unemployed at the time of the injury may recover the loss of future earnings, as defined in La. Rev. Stat. 13:5106(D)(2).

## FACTS AND PROCEDURAL HISTORY

On December 3, 2008, Brandy, a 23-year-old, senior at LSU, went to an indoor rock climbing facility located at the LSU Recreation Center ("Rec Center") to fulfill a compulsory rock climbing assignment for an Outdoor Living Skills Activity course. Upon arrival, Brandy executed the "Rock Wall Participation Agreement" required by LSU. After instruction and a climbing demonstration by the Rec Center employees, Brandy successfully climbed the wall. However, while descending, she fell from the wall, landed on her left foot and fractured the talus bone in her ankle. As a result of the injury, Brandy underwent three surgeries and will require additional surgery, including either a permanent ankle fusion or ankle replacement.

The Feckes filed a petition for damages against the LSU Board. Following a trial, the jury found the LSU Board 75% and Brandy 25% at fault, and awarded Brandy total damages of $1,925,392.72, and Karen Fecke $50,000.00 for loss of consortium. In accord with the jury verdict, the trial court rendered a judgment in favor of Brandy as follows:

| | |
|---|---|
| Past and Future Physical Pain and Suffering | $ 112,500.00 |
| Past and Future Mental Pain and Suffering | $ 93,750.00 |
| Loss of Enjoyment of Life | $ 56,250.00 |
| Permanent Scarring and Disfigurement | $ 123,750.00 |
| Past Medical Expenses | $ 45,294.54 |

| | |
|---|---|
| Future Medical Expenses | $ 750,000.00 |
| Loss of Future Earnings | $ 262,500.00 |
| **TOTAL**: | $1,444,044.54, |

plus judicial interest in the amount of 6.0% pursuant to La. Rev. Stat. 13:5112(C)[3], from the date of judicial demand until paid, and for all costs of the proceedings. The trial court judgment ordered that, after reduction for attorney's fees and costs, Brandy's award for future medical expenses of $750,000.00, plus judicial interest, be placed in the Future Medical Care Trust in accord with La. Rev. Stat. 13:5106(B)(3)(c). The trial court judgment also awarded Karen Fecke $37,500.00 for loss of consortium, plus legal interest and costs. Last, the trial court judgment cast the LSU Board for all court costs, including the fees of the five expert witnesses.

The LSU Board appealed. In a lengthy opinion, the First Circuit Court of Appeal reversed in part, amended in part, and affirmed as amended the trial court judgment. *Fecke v. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, 2015-0017 (La. App. 1 Cir. 7/7/15), 180 So. 3d 326.

The court of appeal amended the judgment to make future medical care payable out of the FMCF, instead of a reversionary trust fund. The court found the LSU Board is a state agency as defined in La. Rev. Stat. 13:5102(A)[4] and,

---

[3]La. Rev. Stat. 13:5112 (C), provides:

C. Legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date service is requested following judicial demand until the judgment thereon is signed by the trial judge in accordance with Code of Civil Procedure Article 1911. Legal interest accruing subsequent to the signing of the judgment shall be at the rate fixed by R.S. 9:3500.

[4] La. Rev. State. 13:5102(A), provides:

A. As used in this Part, "state agency" means any board, commission, department, agency, special district, authority, or other entity of the state and, as used in R.S. 13:5106, any nonpublic, nonprofit agency, person, firm, or corporation which has qualified with the United States Internal Revenue Service for an exemption from federal income tax under Section 501(c)(3), (4), (7), (8), (10), or (19) of the Internal Revenue Code, and which, through contract with the state, provides services for the treatment, care, custody, control, or supervision of persons placed or referred to such agency, person, firm, or corporation

thus, governed by La. Rev. Stat. 13:5106(B)(3)(c). *Fecke*, 2015-0017 at 10, 180 So. 3d at 337-38.

Next, the court of appeal determined Brandy is entitled to legal interest on the award under La. Rev. Stat. 13:5112(C); however, the interest had to be paid into the FMCF. The court noted that La. Rev. Stat. 13:5106(B)(3)(c) requires the fund to pay a claimant's future medicals and related benefits directly to the provider as they are incurred, and does not provide for payment directly to the claimant. It also cited La. Rev. Stat. 39:1533.2(B), which requires interest earned on investment of monies in the FMCF to be deposited in and credited to the fund. Thus, the court vacated the part of the judgment awarding legal interest on the future medical care award directly to Brandy. *Fecke*, 2015-0017 at 11, 180 So. 3d at 338.

The court of appeal further determined Brandy is not entitled to recover attorney's fees and costs from the future medical care award prior to its placement into the trust (*i.e.*, the FMCF), because "medical care and related benefits," as defined in La. Rev. Stat. 13:5106(D)(1), does not include attorney's fees. The court noted the FMCF statute does not provide for a lump sum to be placed into the fund in either Brandy's name or on her behalf, from which attorney's fees and costs could be paid. Thus, the court vacated that portion of the trial court judgment. *Fecke*, 2015-0017 at 12-13, 180 So. 3d at 338-39.

---

by any agency or department of the state in connection with programs for treatment or services involving residential or day care for adults and children, foster care, rehabilitation, shelter, or counseling; however, the term "state agency" shall include such nonpublic, nonprofit agency, person, firm, or corporation only as it renders services to a person or persons on behalf of the state pursuant to a contract with the state. The term "state agency" shall not include a nonpublic, nonprofit agency, person, firm or corporation that commits a willful or wanton, or grossly negligent, act or omission. A nonpublic, nonprofit agency, person, firm or corporation otherwise included under the provisions of this Subsection shall not be deemed a "state agency" for the purpose of prohibiting trial by jury under R.S. 13:5105, and a suit against such agency, person, firm or corporation may be tried by jury as provided by law. "State agency" does not include any political subdivision or any agency of a political subdivision.

As to the loss of future earnings award, the court of appeal found the trial judge erroneously instructed the jury on the "loss of future earnings" instead of the "loss of future earning capacity." The court explained the distinction; the loss of future earnings, not the loss of future earning capacity, is excluded from the $500,000.00 cap under La. Rev. Stat. 13:5106(B)(1). The court noted Subsection (D)(2) of La. Rev. Stat. 13:5106 defines "loss of future earnings" as "any form of economic loss which the claimant will sustain after the trial as a result of the injury . . . which forms the basis of the claim." Citing *Folse v. Fakouri*, 371 So.2d 1120 (La. 1979), the court distinguished "pecuniary loss" from "loss of earning capacity." The court also noted the Fourth Circuit Court of Appeal, in *Cooper v. Public Belt R.R.*, 03-2116, p. 12 (La. App. 4 Cir. 10/6/04), 886 So. 2d 531, 539[5], held the term "pecuniary loss," as used in *Folse*, is synonymous with "economic loss," as defined in La. R.S. 13:5106(D)(2). *Fecke*, 2015-0017 at 29, 180 So. 3d at 349. Given that Brandy was unemployed at the time of the accident, the court of appeal found the trial court erred by awarding her loss of future earnings, and the error was prejudicial because Brandy received more than she was entitled to under the statutory cap. The court of appeal amended the trial court judgment accordingly. *Id.*, 2015-0017 at 29-30, 180 So. 3d at 349-50.

Finally, the court of appeal determined that its modification of Brandy's damage award extinguished the loss of consortium award to Karen Fecke and, thus, vacated that part of the trial court judgment, citing *Jenkins v. State ex rel. Dept. of Transp. & Develop.*, 06-1804 (La. App. 1 Cir. 8/19/08), 993 So.2d 749, *writ denied*, 08-2471 (La. 12/19/08), 996 So.2d 1133 ("An award of general damages in the maximum amount of $500,000.00 as allowed by statute in actions against state agencies and/or political subdivisions of the state serves to

_____

[5] *Writ denied*, 04-2748 (La. 1/28/05), 893 So. 2d 75.

legally extinguish any derivative awards for loss of consortium, services, and society."). *Fecke*, 2015-0017 at 30, 180 So. 3d at 350.

The plaintiffs and the LSU Board applied for writs to this court.[6]

## LAW AND DISCUSSION

"Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent." *Pierce Foundations, Inc. v. JaRoy Construction, Inc.*, 2015-0785, p. 6 (La. 5/3/16), 190 So. 3d 298, 303 (citations omitted). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislative intent. La. Civ. Code art. 9; La. Rev. Stat. 1:4; *Succession of Boyter*, 99-0761, p. 9 (La. 1/7/00), 756 So. 2d 1122, 1128-29. However, when a statute is susceptible of more than one interpretation, the court must apply the one that achieves the legislature's intent and best comports with the principles of reason and justice. *Pierce Foundations,* 2015-0785 at 7, 190 So. 3d at 303; *Freechou v. Thomas W. Hooley, Inc.*, 383 So. 2d 337 (La. 1980). "The starting point for interpretation of any statute is the language itself." *Pierce Foundations,* 2015-0785 at 7, 190 So. 3d at 303 (citations omitted). Also, "'all laws pertaining to the same subject matter must be interpreted *in pari materia*, or in reference to each other.'" *Id*., quoting *State v. Williams*, 10-1514 (La. 3/15/11), 60 So. 3d 1189, 1191; La. Civ. Code art. 13.

---

[6] The LSU Board argued in the court of appeal, and in its writ application to this court, that the trial court had erred by excluding from evidence the Rock Climbing Wall Participation Agreement executed by Brandy. The court of appeal found the trial court had erred by excluding a redacted version of the agreement but that the exclusion was not prejudicial. *Fecke*, 2015-0017 at 24, 180 So. 3d at 346. In granting certiorari, we declined to consider this assignment of error. *Fecke v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,* 2015-1807 (La. 2/19/16), 186 So. 3d. 1175 (Weimer, J., would grant as to all issues).

A helpful guide in ascertaining the intent of the legislature is the legislative history of the statute and related legislation. *Theriot v. Midland Risk Ins. Co.*, 95-2895, p. 4 (La. 5/20/97), 694 So. 2d 184, 186. The Legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law. *Fontenot v. Redell Vidrine Water* Dist., 2002-0439, 2002-0442, 2002-0478, pp.13-14 (La. 1/14/03), 836 So. 2d 14, 24 (citing *Folse v. Folse*, 98–1976 (La. 6/29/99), 738 So.2d 1040 and *New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans,* 94–2223 (La. 4/10/95), 653 So.2d 538).

The Louisiana Governmental Claims Act was adopted in 1975 pursuant to an amendment to the Louisiana Constitution giving constitutional status to the proscription against sovereign immunity from substantive tort liability.[7] The Act establishes procedural rules that apply to any suit in contract or for injury to person or property against the state, a state agency, or a political subdivision of the state. See La. Rev. Stat. 13:5101(B). When enacted, La. Rev. Stat. 13:5106 provided the lone limitation that "[n]o suit against the state, state agency or political subdivision shall be instituted in any court other than a Louisiana state court."[8] In 1985, the Legislature amended La. Rev. Stat. 13:5106 to expand the limitations on suits against the state and political subdivisions.[9] The 1985 revision placed a limit of $500,000.00 on general damages assessed against the state in personal injury and wrongful death actions; provided for the recovery of medical care and related benefits, loss of earnings and/or support, loss of future earnings or support; defined the terms "medical care and related benefits," "loss of earnings," "loss of support,"

---

[7] See 1975 La. Acts 434, §1 and Louisiana Const.1974, article XII, §10.
[8] See 1975 La. Acts 434, §1.
[9] See 1985 La. Acts 452.

"loss of future earnings" and "loss of future support"; and enunciated the legislative findings and purposes of the statute. See La. Rev. Stat. 13:5106(B), (C), (D) and (E).

In 1993, this Court declared La. Rev. Stat. 13:5106(B)(1) unconstitutional, holding the $500,000.00 cap on general damages in a personal injury suit against the State contravened the proscription against sovereign immunity from tort liability provided for in Louisiana Const. 1974 article XII, §10(A). *Chamberlain v. State Through Dept. of Transp. and Development*, 624 So. 2d 874, 881 (La. 1993). In response, the Legislature proposed an amendment to Louisiana Const. 1974 article XII, § 10(C), to allow the legislature to "limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages."[10] The amendment was approved by the voters on October 21, 1995, and went into effect November 23, 1995, allowing a cap on general damages against the State to be reinstated. In anticipation, the Legislature amended La. Rev. Stat. 13:5106 "in accordance with and based upon the legislative authority provided for in the proposed constitutional amendment to Article XII, Section 10 of the Constitution of Louisiana." See *Digest*, 1995 House Bill No. 1936. The 1995 amendments to La. Rev. Stat. 13:5106(B) increased the maximum liability of the State for general damages in wrongful death cases at $750,000.00.[11]

In an effort at tort reform, the Legislature in 1996 amended La. Rev. Stat. 13:5106(B) to limit general damages in suits against the state, a state agency, or political subdivision for personal injury or wrongful death to $500,000.00.[12] It also added paragraphs (D)(3) and (4), defining "reversionary trust" and "derivative

---

[10] See 1995 La. Acts 1328.
[11] See 1995 La. Acts 828, §2.
[12] See 1996 La. Acts 1st Ex. Sess., 63, §1

claims", respectively.[13] In 2000, the Legislature amended and reenacted La. Rev. Stat. 13:5106, as it related to suits against the state and state agencies, to establish the FMCF; to provide for the payment of future medical expenses and related benefits; and to provide for the funding and administration of the FMCF.[14, 15]

In 2004, this Court held the $500,000.00 cap on damages for a wrongful death action under La. Rev. Stat. 13:5106(B)(2) applied to each individual plaintiff, instead of each death victim. *Lockett v. State, Department of Transportation*, 2003-1767 (La. 2/25/04), 869 So. 2d 87. The Legislature responded, amending La. R.S. 13:5106(B)(1) and (2) to limit the total liability of the state and political subdivisions for personal injury or wrongful death of any one person, including all claims and derivative claims, to $500,000.00 regardless of the number of suits filed or claims made for the personal injury or wrongful death of that person.[16] More recently, the Legislature amended La. Rev. Stat. 13:5106, adding subsection F, to preclude the application of La. Rev. 13:5106 to claims arising under La. Rev. Stats. 40:1299.39[17], the Malpractice Liability for State Services Act.[18]

With the above historical framework in mind, we turn to the issues that prompted our grant of certiorari. "Because the matter involves the interpretation of statutory provisions and only questions of law are presented, our review is *de novo*." *Pierce Foundations,* 2015-0785 at 7, 190 So. 3d at 303 (citation omitted).

### *Judicial Interest on Award for Future Medical Expenses*

At the outset, we agree with the court of appeal that the LSU Board is a state

---

[13]See *id.*
[14]See 2000 La. Acts 1st Ex. Sess., 20, §§ 1, 2, 4 and 5.
[15] 2000, 1st. Ex. Sess., 20, § 3  repealed La. R.S. 39:1533.1, relating to the Master Reversionary Trust Fund.
[16]See 2005 La. Acts 1, §1.
[17] La. Rev. Stats. 40:1299.39 to 1299.39.3 were redesignated as La. Rev. Stats. 40:1237.1 to 40:1237.4 by House Concurrent Resolution No. 84 of the 2015 Regular Session.
[18] See  2010 La. Acts  301, §1.

agency, as defined in La. Rev. Stat. 13:5102(A), and, therefore, the Feckes' suit is governed by La. Rev. Stat. 13:5106(B)(3)(c) and La. Rev. Stat. 39:1533.2. See *Fecke*, 2015-0017 at 9-10, 180 So. 3d at 337. Louisiana Rev. Stat. 13:5102(A) is clear and unambiguous, and is to be applied as written. See La. Civ. Code art. 9.

The issue of whether a plaintiff is entitled to legal interest on an award of future medical expenses paid directly to the health care provider from the FMCF is a *res nova* issue in the jurisprudence. The LSU Board argues the court of appeal erred in ordering judicial interest on the future medical care award to be deposited in the FMCF, and maintains the State is not liable for judicial interest on the award. In support, the LSU Board relies on La. Rev. Stats. 39:1533.2 and 13:5106(B)(3)(c), which allow only medical care and related benefits to be paid on a claim for future medical care against the state or state agency. The LSU Board maintains a claim for future medical care against the FMCF is no different than a claim for future medical care against the Patient's Compensation Fund ("PCF") under the Louisiana Medical Malpractice Act and should be treated the same, citing *Hall v. Brookshire Bros., Ltd.*, 02-2404 (La. 6/27/03), 848 So.2d 559.

The Feckes, on the other hand, agree the court of appeal erred in directing legal interest to be paid to the FMCF, but maintain the trial court correctly ordered interest on future medical care to be paid directly to Brandy. They contend La. Rev. Stat. 13:5112, which provides for the payment of judicial interest on a personal injury award against the state, controls rather than La. Rev. Stat. 39:1533.2. In addition, the Feckes maintain the jurisprudence interpreting Medical Malpractice Act is not applicable to the FMCF provision because the statutes are dissimilar, noting the FMCF is funded with public monies and the PCF with private monies.

12

In amending the part of the judgment awarding judicial interest on future medical care, the court of appeal agreed Brandy was entitled to judicial interest on the award, but concluded it had to be paid to the FMCF pursuant to La. Rev. Stat. 39:1533.2. Read in isolation, La. Rev. Stat. 13:5112 tends to support the Feckes' contention that Brandy is entitled to legal interest on the entire personal injury award, including the future medical care claim. See *Edwards v. Daugherty*, 03-2103 (La. 4/27/01), 791 So. 2d 107 (finding prejudgment judicial interest on future medical damage award is recoverable where La. Rev. Stat. 13:4203 does not expressly bar recovery of prejudgment interest). However, by amending the award, the court of appeal implied the general provisions of La. Rev. Stat. 13:5112 were modified, with respect to future medical expenses, with the enactment of La. Rev. Stat. 39:1533.2. See *Fecke*, 2015-0017 at 11, 180 So. 3d at 338.

Neither La. Rev. Stat. 13:5106(B)(3)(c) nor La. Rev. Stat. 39:1533.2 specifically addresses judicial interest. Similarly, the definition of "medical care and related benefits" in La. R.S. 13:5106(D)(1) does not include judicial interest. Therefore, we must ascertain the legislature's intent in enacting the relevant provisions. Because La. Rev. Stat. 13:5106 limits damages of the State in derogation of the general rights of tort victims, any ambiguities in the statute should be strictly construed. See *David v. Our Lady of the Lake Hospital Inc.*, 2002-2675, p. 11 (La. 7/2/03), 849 So. 2d 38, 47 (interpreting La. Rev. Stat. 9:5628); *Conerly v. State*, 97-0871, p. 3 (La. 7/8/98), 714 So. 2d 709, 710 (interpreting La. Rev. Stat. 40:1299.39).

In 1985, when the Legislature amended La. Rev. Stat. 13:5106 to expand the limitations on suits against the state and political subdivisions, Act 452 was one of six separate statutory measures enacted that year to relieve the State of the

13

ordinary burdens of tort liability.[19]  The intent of the Legislature is manifest in the addition of Subsection E to the statute. The Legislature determined public entities could no longer pay judgments on a current basis and those judgments jeopardized the public fisc.  <u>See</u> La. Rev. State. 13:5106(E)(1) and (2). It amended the statute "to curb the trend of governmental liability abuses, to balance an individual's claim against the needs of the public interests and the common good of the whole society, and to avoid overburdening Louisiana's economy and its taxpaying citizens with even more new and/or increased taxes than are already needed for essential programs."  La. Rev. Stat. 13:5106(E)(3). Nonetheless, the Legislature made clear the revision did not reestablish sovereign immunity.  <u>See</u> La. Rev. Stat. 13:5106(E)(3). While general damages against the state in personal injury and wrongful death actions were capped, medical care and related benefits, loss of earnings and/or support, and loss of future earnings and/or support were provided for, and excluded from, the statutory cap. <u>See</u> La. Rev. Stats. 13:5106(B) and (C).

The 1996 amendment to La. Rev. Stat. 13:5106 added subsection (D)(3)[20] to define and provide for a "reversionary trust" as a means for the state, a state agency or a political subdivision to pay the medical care and related benefits, as they accrue, of a particular claimant.  However, in 2000, the Legislature amended the statute to redefine "reversionary trust" making it applicable to political

---

[19] <u>See</u> *Lockett*, 2003-1767 at 5, 869 So. 2d at 91 (citation omitted).

[20] Subsection (D)(3), as originally written, provided:

> (3) "Reversionary trust" means a trust established by the state, state agency, or political subdivision for the exclusive benefit of the claimant to pay the medical care and related benefits as they accrue, including without limitation reasonable and necessary amounts for all diagnosis, cure, mitigation, or treatment of any disease or condition from which the injured person suffers as a result of the injuries, and the *sequelae* thereof, sustained by the claimant on the date the injury was sustained. The trustee shall have the same fiduciary duties as imposed upon a trustee by the Louisiana Trust Code. Nothing herein shall limit the rights of claimants to contract with respect to attorney fees and costs.

subdivisions only. <u>See</u> La. Rev. Stat. 13:5106(D)(3). Concurrently, the Legislature established the FMCF (La. Rev. Stat. 39:1533.2) whose sole purpose was to pay all medical care and related benefits incurred subsequent to a judgment against the state or a state agency in a personal injury suit. <u>See</u> La. Rev. Stat. 13:5106(B)(3)(c). To fund the FMCF, the state treasurer was required to transfer ten million dollars ($10,000,000.00) from the Self-Insurance Fund[21] for deposit in and credit to the FMCF. <u>See</u> 2000 La. Acts 1ˢᵗ Ex. Sess., 20, §4; <u>see</u> <u>also</u> La. Rev. Stat. 39:1533.2. Thereafter, at the close of each fiscal year, the treasurer is required to transfer from the Self-Insurance Fund to the FMCF an amount equal to the monies expended from the FMCF during that fiscal year. La. Rev. Stat. 39:1533.2(B).

The FMCF originated from House Bill No. 54, prior to its enrollment as 2000 La. Acts 1ˢᵗ Ex. Sess., 20, §§ 2, 4 and 5.[22] At the request of Representative McMains, who was an author of the bill, Seth Keener, then Director of the Office of Risk Management ("ORM"), presented and testified in favor of the bill before the House Committee on Appropriations.[23] According to Keener, the ORM was the impetus behind the proposed bill; it saw the creation of the FMCF as a means to protect the public fisc, by not encumbering large amounts of public funds at any one time for a particular claimant, and to reduce the substantial administrative costs associated with a plethora of reversionary trusts.[24]

The FMCF, unlike a reversionary trust, contains no funds earmarked or

---

[21]The Self-Insurance Fund consists of all premiums paid by state agencies under the state's risk management program. <u>See</u> La. Rev. Stat. 39:1533(A).

[22]<u>See</u> Digest, 2000 1ˢᵗ Ex. Sess. House Bill 54.

[23]Minutes, House Committee on Appropriations, March 21, 2000, 2000 First Extraordinary Session.

[24]*The Future Medical Care Fund for the Payment of Future Medical Care and Related Benefits Resulting from Lawsuits against the State*: Hearing on H.B. 54 Before the H. Comm. on Appropriations, March 21, 2000, 2000 First Extraordinary Session (La. 2000) (statement of Seth Keener, Director, Office of Risk Management); *see also* (http://house.louisiana.gov/Hse_Video Requested.aspx)

reserved for a particular claimant. See La. Rev. Stat. 13:5106(D)(3). Although state funds are transferred into the FMCF, unless the legislature specifically appropriates the funds to pay a particular judgment, *e.g.*, Brandy's future medical care and related benefits, they remain public funds exempt from seizure or court order compelling their payment for any other purpose. See La. Rev. Stat. 13:5109(B)(2); see also Cf. *Newman Marchive Partnership, Inc. v. City of Shreveport*, 07-1890, pp. 7-8 (La. 4/8/08), 979 So. 2d 1262, 1268 (Money appropriated by the City of Shreveport to the Retained Risk Fund, an account established to pay claims and judgments against the political subdivision, was not a specific appropriation by the city's legislative branch to pay the claimant's judgment, and therefore not subject to a writ of mandamus compelling the city to pay claimant's judgment against it.)

After the FCMF was established, the Legislature amended La. Rev. Stat. 13:5106 in 2005 to limit the total liability of the state and political subdivisions for personal injury or wrongful death of any one person, including all claims and derivative claims, to $500,000.00 regardless of the number of suits filed or claims made for the injury or death of that individual. See La. Rev. Stat. 13:5106(B)(1) and (2). Significantly, from 1985 to the most recent revision in 2010, the Legislature retained the language set forth in Subsection E as its stated purpose and intent.

As previously mentioned, there is no jurisprudence interpreting the FMCF statute. In *Hall v Brookshire Brothers, supra,* this Court examined the Medical Malpractice Act, the statute establishing the PCF, to consider whether the PCF owed legal interest on the entire amount awarded by the jury, prior to the imposition of the medical malpractice cap, or, at a minimum, on the award for

future medical expenses. *Hall*, 02-2404 at 24, 848 So.2d at 574. We concluded that the PCF does not require payment of judicial interest on an award of future medical damages and interest is not owed until the expenses are actually incurred, stating:

> In the context of the Medical Malpractice Act, then, future medical expenses are to be paid when and as incurred. LSA-R.S. 40:1299.43. With respect to the accrual of legal interest on these expenses, we agree with and adopt the holding of the court of appeal in [*Lamark v. NME Hospitals, Inc.*, 522 So.2d 634, 640 (La. App. 4th Cir 1988)], stating:
>
>> Section 1299.43, specifically dealing with future medical care and related benefits, makes no mention of interest. Nevertheless, we do not believe that the legislature intended for interest to be paid from the date of demand on judgment amounts which the statute specifies are to be paid as and when incurred.
>
>> Interest on future medical benefits is thus payable from the date of the filing of the complaint or the date the expenses were incurred, whichever is later. *Id.* In this case, since the $35,251.43 award for past medical expenses, which was reduced to $29,963.72, represents "future" medical expenses that have already been incurred, interest is owed on this amount. However, the $3,862,835.00 award for future medical care represents expenses that have not yet been incurred. As such, legal interest is not owed on this amount unless and until the expenses are actually incurred.

*Hall*, 02-2404 at 28, 848 So.2d at 576 (footnotes omitted).

We agree with the LSU Board that the decision in *Hall* is persuasive and, therefore, adopt its reasoning in this matter. Like La. Rev. Stat. 40:1299.43 of the Medical Malpractice Act, La. Rev. Stat. 13:5106 (D)(1) makes no mention of interest. For the purpose of the FMCF, medical care and related benefits is defined as "all reasonable medical, surgical, hospitalization, physical rehabilitation, and

17

custodial services, and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services." La. Rev. Stat. 13:5106(D)(1). Also, La. Rev. Stat. 13:5106(B)(3)(c) provides the "[m]edical care and related benefits shall be paid directly to the provider as they are incurred."

Under these circumstances, we find that the legislature did not intend for interest to be paid from the date of demand on judgment amounts which the statute specifies are to be paid to the health care provider as they are incurred. Moreover, it would make little sense for the legislature to provide that an award for future medical care must be paid into the FMCF, yet allow judicial interest on that award to be paid directly to the claimant. The FMCF statute provides that "[i]nterest earned on investment of monies in the fund shall be deposited in and credited to the fund." La. Rev. Stat. 39:1533.2(B). Admittedly, this language refers to investment income rather than judicial interest; nonetheless it suggests the legislature intended to keep all money derived from the future medical care award in the fund. We believe our interpretation is consistent with the overall purpose of the Act as set forth in La. Rev. Stat. 13:5106(E).

Although the Feckes argue this case is distinguishable from *Hall* because the PCF is funded from private monies, we believe the purpose of the legislation underlying each fund is quite similar. The Medical Malpractice Act, adopted in response to the increasingly prohibitive costs of medical malpractice insurance, sought to ensure the availability of safe and affordable health care services to the public and to simultaneously limit the significant liability exposure of health care providers. *Hall*, 02-2404 at 9-10, 848 So.2d at 565 (citation omitted). On the other hand, the Act, enacted in response to the increased number of judgments against the state as a result of the proscription of sovereign immunity, sought to

18

curb governmental liability abuses, to balance an individual's claim against the needs of the public interests and the common good of the whole society, and to avoid overburdening Louisiana's economy and its citizens with new and/or increased taxes. In both cases, the legislature sought to provide for the needs of the tort victim claimant while simultaneously protecting the public's interest, either directly (the FMCF preserves public funds) or indirectly (the PCF limits the liability of health care providers generally, helping make health care costs more affordable for all).

In addition, we find no merit to the Feckes' argument that, unlike *Hall*, the instant case arises under the general tort law and, therefore, La. Rev. Stat. 13:5112(C) applies. Louisiana Const. 1974 art. XII, §10(C) provides, "the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and *the kinds and amounts of recoverable damages*." (Emphasis added). The Legislature exercised its constitutional authority in amending La. Rev. 13:5106 (B)(3) to establish the FMCF, and if it had intended to allow a claimant to recover interest on a future medical care award placed into the FMCF, then it would have provided such, but it did not.

### Attorney's Fees and Costs

We turn now to the issue of attorney's fees and costs. The Feckes argue the trial court correctly held Brandy is entitled to attorney's fees and costs from the FMCF prior to its placement into the fund, and the court of appeal erred in holding otherwise.

19

In *Dipaola v. Municipal Police Employees' Retirement System*, 14-0037 (La. App. 1 Cir. 9/25/14), 155 So.3d 49[25], the court of appeal explained "[u]nder Louisiana law, attorney fees are not allowed except where authorized by statute or by contract." *Id.* at 4, 155 So. 3d at 52 (citations omitted). In this case, no contract or statute authorizes attorney's fees. Louisiana Rev. Stat. 13:5106(B)(3)(c) provides a claimant is entitled to "medical care and related benefits that may be incurred subsequent to judgment." As noted in our discussion of judicial interest, neither this statute nor the statutory definition of "medical care and related benefits" includes attorney's fees or costs. Moreover, in *Starr v. Dept. of Transp. & Develop.*, 46,226 (La. App. 2 Cir. 6/17/11), 70 So.3d 128, the Second Circuit Court of appeal concluded that attorney's fees are not "medical care and related expenses" that qualify for payment from the FMCF. *Id.* at 25, 70 So. 3d at 144.

In addition, a search of the statutes and jurisprudence reveals no statute that authorizes payment of attorney's fees for future medicals prior to payment of the judgment into the FMCF. Louisiana Rev. Stat. 13:5112(A)[26] specifically provides for payment of costs in a personal injury suit against the state, but does not specifically provide for attorney's fees. Although La. Rev. Stat. 13:5106(D)(3) refers to attorney's fees in the provision defining "reversionary trust," that "[n]othing herein shall limit the rights of claimants to contract with respect to attorney's fees and costs," the Feckes' reliance on this provision is misplaced because it applies only to political subdivisions.

---

[25] *Writ denied*, 2014-2575 (La. 2/27/15), 159 So. 3d 1071.
[26] La. Rev. Stat. 13:5112 (A), provides:

A. In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party's court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.

We find no merit to this assignment of error.

*Loss of Future Earning Capacity*

The final issue that prompted our grant of certiorari concerns an award for loss of earning capacity. Specifically, the issue is whether Brandy's loss of future earnings is properly an award of loss of future earnings or loss of future earning capacity. As the court of appeal explained, the difference is significant; La. Rev. Stat. 13:5106(B)(1) establishes a $500,000.00 cap on all damages for personal injury, exclusive of loss of future earnings.

The Feckes argue the court of appeal erred in finding the trial court should have instructed the jury on loss of future earning capacity. They maintain *Folse v. Fakouri*, 371 So.2d 1120 (La. 1979), relied on by the court of appeal, did not foreclose damages for future losses extrapolated from losses already experienced prior to trial. Rather, the Feckes maintain, a strict reading of *Folse* holds that a loss of earning capacity is not implicated unless a claimant had never profited monetarily in his or her chosen career. By contrast, LSU contends the Feckes are attempting to change the classification of the claim from loss of future earning capacity to loss of future earnings despite the uncontested fact that Brandy was unemployed when injured.

La. Rev. Stat. 13:5106(D)(2) defines "loss of future earnings" as "any form of economic loss which the claimant will sustain after the trial as a result of the injury or death which forms the basis of the claim." In *Folse*, this court appeared to distinguish between "loss of future earnings" and "loss of future earning capacity." In *Folse*, the plaintiff filed suit against defendant, seeking injuries arising out of a vehicle accident that occurred in the course of plaintiff's employment as a school bus driver. A jury rendered judgment in favor

of the plaintiff, but the court of appeal later amended and lowered the amount of the damage award, including the award for loss of future earnings and future earning capacity. This Court, in an opinion authored by Chief Justice Summers, reversed and reinstated the trial court's loss of future earnings and future earning capacity award. The *Folse* court drew a distinction between "pecuniary loss" and "loss of earning capacity":

> The jury was entitled to determine from these and other factors in the record the probabilities and estimates of plaintiff's ability to earn money. **What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power.** And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976). Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury.

> While the general rule set forth in the Civil Code is that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, **yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party.** La. Civil Code art. 1934(3). While this rule is stated in the Code to be applied where the contract has for its object the gratification of some intellectual enjoyment, the principle announced there may be applied by analogy to the loss of earning capacity where "damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party." It is a rule of reason and common sense applicable to contracts and torts alike.

> \* \* \*

> **Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity.** The theory is that the **injury done him has deprived him of a capacity he would have been**

> **entitled to enjoy even though he never profited from it monetarily. [Emphasis added]**

*Folse,* 371 So. 2d at 1123-24.

The court of appeal later revisited *Folse* in *Cooper v. Public Belt Railroad,* 03- 2116 (La. App. 4 Cir. 10/6/04), 886 So. 2d 531, and reiterated the distinction between "loss of future earnings" and "loss of future earning capacity." More specifically, the *Cooper* court found the term "pecuniary loss" as used in *Folse* is synonymous with "economic loss" as employed in La. Rev. Stat. 13:5106(D)(2):

> In *Folse* the Supreme Court found error in the appellate court's reliance "altogether on the pecuniary loss, without considering the contention that there was also a loss of earning capacity . . . " Therefore, the Supreme Court in *Folse* draws a distinction between a "pecuniary loss" and "loss of earning capacity." We find that the term "pecuniary loss" as used in *Folse* by the Supreme Court is synonymous with "economic loss" as employed in La. R.S. 13:5106 D(2). The *Folse* opinion goes on to explain the rationale behind the concept of loss of future earning capacity as opposed to loss of future earnings:
>
> > The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it **monetarily**. [Emphasis added.]
>
> *Id.*, 371 So.2d at 1123. By noting that proof of loss of future earning capacity does not require proof of future monetary loss, the *Folse* opinion reinforces the conclusion of this Court that loss of future earning capacity is not an "economic loss" within the intendment of La. Rev. Stat. 13:5106 D(2).

*Cooper*, 03-2116 at 11-12, 886 So. 2d at 539.

In the instant case, the court of appeal followed *Cooper* and concluded that loss of future earning capacity was not an economic loss. Thus, the court held Brandy could not receive an award for loss of earnings or loss of future earnings because she was unemployed at the time of the accident and could not have suffered

any economic loss. However, the Fourth Circuit clarified and limited its holding in *Cooper* in *Iles v. Ogden*, 2009-0820 (La. App. 4 Cir. 2/26/10), 37 So. 3d 427. In *Iles*, the court considered whether a claim for loss of the value of an inheritance is logically included in La. R.S. 13:5106(C)(1)(d),"loss of future support." *Iles,* 2009-0820 at 25, 37 So. 3d at 444. Specifically, the court concluded that if a claim is properly supported by the record, that is, "[i]f the evidence is not speculative and [is] capable of mathematical calculation," then the loss "is a specific damage and not a general damage." *Id.*

At the conclusion of trial in this case, the trial court gave the following jury charge:

> Under the loss of future earnings component of damages, the plaintiff is entitled to recover damages for the deprivation of what she should have earned but for the injury. Such damages are calculated on the plaintiff's ability to earn money in her chosen career compared to what she can now earn because of her injury. In determining such an award, you may consider plaintiff's physical condition and mental status before and after this incident, her work record, her earnings in prior years, the probability or improbability that she would have earned similar amounts in the remainder of her work life, and similar factors. And since, if you make an award, plaintiff would be receiving today sums of money that otherwise she would only receive over a number of years in the future, the law requires that you discount or reduce it to its present value, which is what the experts in this case have already done.

The LSU Board's counsel objected to the jury charge. The trial court overruled the objection, allowing the jury to consider the charge. After citing to the Fourth Circuit's decision in *Cooper,* and this Court's decision in *Folse,* the trial court gave the following reasons for his ruling:

> But all the cases that I found seemed to make a distinction, or even those that did not where they talked about loss of earning capacity, talked about something for which the plaintiff might have been qualified to do but had never sought to pursue. And by the injury they lost the ability to pursue that capacity in the future. The cases dealing with loss of future earnings dealt with cases where the injured plaintiff was already in a certain

24

career or profession or job description and they could not continue on in that same job. The evidence in this case was that Ms. Fecke was, despite her injury, able to qualify and go into her chosen profession of physical therapy assistant, but because of her injury will not be able to continue in that type of employment and must therefore seek other employment which may or may not pay less, as indicated by the experts who testified. So for that reason, I felt that this was more loss of future earnings as opposed to loss of earning capacity. So that's why I gave that charge as opposed to a future earning capacity charge or a future earning capacity entry on the verdict form.

Brandy testified at trial that although she was unemployed at the time of her injury, she was just two weeks from graduating with her Bachelor of Science in Kinesiology. Thereafter, she returned to school to obtain a certification as a physical therapist assistant. She began working as a physical therapy assistant, but the job entailed long hours of standing, walking and weight-bearing activity, all of which proved difficult with her injured ankle. As a result, by the time of trial, Brandy had already changed employment to a less demanding physical therapy assistant position with fewer hours and less pay.

At trial, Stephanie P. Chalfin, M.S., the Feckes' expert vocational rehabilitation consultant and life care planner, testified with specificity regarding Brandy's education, work history, current earnings and future vocational prospects, in light of her physical limitations which would affect her future earnings. Also, Harold Asher, C.P.A., the Feckes' expert in the projection of economic losses, reviewed Chalfin's report regarding future life care and calculated Brandy's economic outlook, including loss of future earnings. Asher testified regarding Brandy's income tax returns and her then current earnings as physical therapy assistant. The expert testimony and reports of these two witnesses establish Brandy's future loss of earnings is pecuniary in nature, rather than speculative and uncertain. Thus, we find the jury instruction and verdict form citing "loss of future

earnings" were proper and not an abuse of the trial court's discretion. Thus, the portion of the court of appeal judgment amending Brandy's award for loss of future earnings to loss of future earning capacity subject to the $500,000.00 cap is vacated and the trial court judgment reinstated.

## DECREE

Accordingly, for the above reasons, the judgment of the court of appeal is reversed insofar as it held Brandy was entitled to legal interest on an award for future medical care and ordered said interest had to be paid into the FMCF; affirmed insofar it held Brandy was not entitled to recover attorney's fees and costs from an award for future medical care prior to its placement into the FMCF; and reversed insofar as it vacated Brandy's award for loss of future earnings, and the trial court judgment awarding loss of future earnings reinstated.

**REVERSED IN PART; AFFIRMED IN PART; AND TRIAL COURT JUDGMENT REINSTATED IN PART.**

26

09/23/16

# SUPREME COURT OF LOUISIANA

## NO. 2015-C-1806

## CONSOLIDATED WITH

## NO. 2015-C-1807

## BRANDY LYNN FECKE, STEPHEN C. FECKE, AND KAREN FECKE

## VERSUS

## THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY

## AND AGRICULTURAL AND MECHANICAL COLLEGE

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT,*
*PARISH OF EAST BATON ROUGE*

**WEIMER, J.**, concurs.

I agree with the majority's ultimate disposition of the three issues raised in these consolidated matters; however, I write separately to more fully address the issue of Brandy's entitlement to loss of future earnings.

In its opinion, the majority traces the jurisprudence stemming from this court's decision in **Folse v. Fakouri**, 371 So.2d 1120, 1123-24 (La. 1979), which drew a distinction between "pecuniary loss," *i.e.*, "loss of future earnings" and "loss of future earning capacity," to conclude that, under the evidence in this case, "Brandy's future loss of earnings is pecuniary in nature, rather than speculative and uncertain" and, therefore, falls under the category of pecuniary loss or "loss of future earnings" outlined in **Folse**. See **Fecke v. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College**, 15-1806, 15-1807, slip op. at 25 (La. 9/23/16). While the discussion of the jurisprudence that has evolved since **Folse** is edifying, I believe that it is ultimately unnecessary, as the issue of Brandy's entitlement to loss of future earnings is appropriately resolved by resort to statutory

law and an examination of the definition of "loss of future earnings" found in La. R.S. 13:5106(D)(2). Quite simply, this is because, under Louisiana's civilian tradition, every legal analysis must begin by examining the primary sources of law, consisting of the Constitution, codes, and statutes. Jurisprudence, even when it arises to the level of *jurisprudence constante*, is a secondary source of law. **Delta Chemical Corp. v. Lynch**, 07-0431, p. 13 (La.App. 4 Cir. 2/27/08), 979 So.2d 579, 588 (citing Alvin B. Rubin, *Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the Erie Railroad*, 48 La. L. Rev. 1369, 1372 (1988)).

Relevant to the case before us, the primary source of law which guides our decision is statutory. The relevant statute, La. R.S. 13:5106(D)(2), defines "loss of future earnings" as "*any* form of economic loss which the claimant *will* sustain after the trial as a result of the injury or death which forms the basis of the claim." (Emphasis added.) The statutory phrase "any form of economic loss" indisputably includes wages from pre-injury employment ("loss of future earnings"), but it is both logically and semantically broader than pre-injury wages alone. To hold otherwise would render the word "any" in the statute meaningless, a result our rules of statutory interpretation proscribes. **Moss v. State**, 05-1963, p. 15 (La. 4/4/06), 925 So.2d 1185, 1196 ("[C]ourts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.").

Clearly, as written and according to its plain language, the statutory definition of "loss of future earnings" is broad enough to include within its ambit both forms of economic loss distinguished in the jurisprudence – "loss of future earnings" and "loss of future earning capacity" – so long as the loss is documented and not speculative (hence the reference in the statutory definition to economic loss the claimant "will"

2

sustain as a result of the injury). To the extent that the decision in **Cooper v. Public Belt Railroad**, 03-2116 (La.App. 4 Cir. 10/6/04), 886 So.2d 531, suggests otherwise, I believe that decision should be overruled.

As the late Justice Albert Tate, Jr. so aptly stated:

> The civilian does not regard the judicial interpretations of a statute as becoming part of the statute, so that the statute *as interpreted* is the law. He regards the statute alone as being the law, and prior decisions do not "insulate" him ... from going directly to the statute for its meaning. In ideal theory, the civilian judge decides cases primarily "not by reference to other decisions, but by reference to legislative texts and within the limits of such judicial discretion as the legislative texts grant."

Albert Tate, Jr., *Techniques of Judicial Interpretation in Louisiana*, 22 La.L.Rev. 727, 744 (1962) (footnotes omitted). Following our civilian roots and drawing upon the primary source of law governing resolution of the issue presented in this case – the statute – I therefore agree with the majority's conclusion that the district court's award for loss of future earnings should be reinstated, but I do so because that is the result the language of the statute commands.